**Patricia NELSKI, a.k.a. Patricia Pelland, Plaintiff–Appellant,**

v.

**TRANS UNION, LLC, Defendant–Appellee.**

No. 02–2187.

United States Court of Appeals, Sixth Circuit.

Jan. 15, 2004.

Barry A. Seifman, Raymond Guzall, III, Barry A. Seifman Assoc., Farmington Hills, MI, for Plaintiff-Appellant.

Monica L. Thompson, Daniel O. Halvorsen, Piper Rudnick, Chicago, IL, for Defendant-Appellee.

Before COLE and CLAY, Circuit Judges; and COLLIER, District Judge.*

## OPINION

COLLIER, District Judge.

Plaintiff–Appellant Patricia Nelski brought suit against, among others. Defendant–Appellee Trans Union, a credit reporting agency, alleging violations of the Fair Credit Reporting Act. 15 U.S.C. § 1681, *et seq.* ("FCRA"), and asserting a claim for defamation under Michigan common law. Nelski contends Trans Union failed to employ reasonable procedures in preparing her credit report and failed to reinvestigate disputed financial information in a timely manner. The district court granted summary judgment in favor of Trans Union on Nelski's FCRA claims and dismissed her state law claim for the resulting lack of jurisdiction and Nelski now appeals. For the reasons set forth below, we AFFIRM the district court's grant of summary judgment in all respects.

## I. FACTS AND PROCEDURE

### A. Factual Background

This action arose from Plaintiff–Appellant Patricia Nelski's attempts to correct her financial information and clear her record of the effects of various fraudulent accounts opened in her name.[1] At some point in 1996, Nelski discovered she had been the victim of identity theft. Nelski observed her name accompanied by an in-

---

* The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1. This is one of two actions brought by Nelski in the wake of her protracted attempts to clear up her credit report. The other is *Nelski v. Risk Management Alternatives, Inc.,* Sixth Circuit Case No. 02–1926.

correct address listed in the phone book published and distributed by Ameritech, a telecommunications company. Nelski, herself an Ameritech customer, contacted Ameritech and discovered an account had been opened by someone using her name and a Social Security number only one digit removed from her own. Nelski claims Ameritech promised to take care of the matter. It appears, however, the account remained open and at some point a bill or obligation went unpaid, leading Ameritech to employ Abacus Financial Management Services ("Abacus"), a debt collection agency, to collect on the debt. In the spring of 1998. Abacus was acquired by Risk Management Alternatives. Inc. ("Risk Management"). As a result of this merger, a new series of numbers were assigned to the accounts previously administered by Abacus. Thus, the original account opened in Nelski's name, Abacus Account No. 1967990, was changed to Risk Management Account No. 550228.

Defendant–Appellee Trans Union is a national credit reporting agency in the business of providing consumer credit reports to its subscribers who then use that information to make decisions regarding credit applications. In May 1999. Nelski became aware of various items of false information appearing on her credit report. On May 24, 1999, Nelski obtained a copy of her credit report from another national credit reporting agency. Experian, which contained two entries reflecting a debt owed to Ameritech. The first entry showed a debt in the amount of $1,022 to Ameritech and assigned to Abacus for collection referencing Account No. 1967990. The second entry showed a debt of $1,023 owed to Ameritech and assigned to Risk Management for collection referencing Account No. 550228. Nelski claims to have contacted Ameritech, Risk Management, and Experian on or about June 3, 1999, and informed them of the error. Ameritech wrote Nelski a letter dated June 11,

1999, indicating it was in the process of removing the account "from [her] name and responsibility" and the information should be corrected within 90 days. Risk Management then sent Nelski a letter dated June 15, 1999, indicating it had closed and returned the account to Ameritech and advising her to wait 60 days "for the reporting agents to update this information." Risk Management's file log for Account No. 550228 indicates it changed Trans Union's credit report flag on that account from "Y" (yes, *i.e.*, report to credit bureau) to "D" (delete) on July 1, 1999, and from "D" to "R" (remove) on July 15, 1999.

On February 3, 2000, Nelski again obtained a copy of her credit report, this time from Trans Union, and discovered it still reflected a $1,022 debt owed to Ameritech and assigned to Risk Management for collection. This entry referenced Risk Management Account No. 1967990. Nelski sent Trans Union a letter dated February 8, 2000, stating this account was fraudulent and asking it be removed from her credit report. Trans Union claims this letter was received by its data services office on February 28, 2000, which then forwarded it to the fraud victim assistance department where it arrived on March 6, 2000. Nelski also claims to have contacted Ameritech again at this time. Risk Management instructed Trans Union to delete Account No. 1967990 on March 7, 2000, and Account No. 1967990 was finally deleted from Plaintiff's report on March 28, 2000.

## B. District Court Proceedings

Nelski filed the present lawsuit on February 1, 2001, in Michigan Circuit Court, naming as defendants Trans Union, Ameritech Services, Inc., Ameritech Communications, Inc., Ameritech Corp., Ameritech Publishing, Inc., and Experian Information Solutions, Inc. Nelski's complaint alleged

general violations of the FCRA and asserted a Michigan common law defamation claim. Experian promptly removed the case to federal court and was ultimately dismissed from the case in April 2001 pursuant to a Stipulation and Order. The district court then granted summary judgment in favor of the various Ameritech defendants, which Nelski has not appealed. Trans Union, the only remaining defendant, then filed a motion for summary judgment arguing (1) it had not violated 15 U.S.C. § 1681e(b); (2) it had not violated 15 U.S.C. § 1681i(a)(1)(A); (3) Plaintiff's claims were barred by the statute of limitations; and (4) Plaintiff's state law defamation claim was not actionable. The district court granted Trans Union's motion on September 5, 2002, holding Plaintiff could not establish a claim under either 15 U.S.C. § 1681e(b) or § 1681i. However, the district court rejected Trans Union's statute of limitations argument and declined to consider Trans Union's arguments regarding Plaintiff's defamation claim, instead dismissing that claim without prejudice for lack of supplemental jurisdiction. Plaintiff now appeals the district court's ruling.

## II. STANDARD OF REVIEW

The Court reviews *de novo* a district court's order granting summary judgment. *Smith v. Ameritech,* 129 F.3d 857, 863 (6th Cir.1997). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Initially, the burden is on the moving party to conclusively show no genuine issue of material fact exists. *Leary v. Daeschner,* 349 F.3d 888, 897 (6th Cir.2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323, 106 S.Ct. at 2552.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Weaver v. Shadoan,* 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.; Lansing Dairy. Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir.1994).

## III. ANALYSIS

The FCRA. 15 U.S.C. § 1681 *et seq.,* originally enacted in 1968, is designed to

protect consumers from inaccurate information in consumer reports by establishing credit reporting procedures which "utilize correct, relevant and up-to-date information in a confidential and responsible manner." *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 965 (6th Cir. 1998). The FCRA imposes distinct obligations on three types of entities: (1) consumer reporting agencies; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies. *Carney v. Experian Info. Solutions, Inc.*, 57 F.Supp.2d 496, 500 (W.D.Tenn. 1999). A consumer is authorized to bring suit for willful or negligent violations of the responsibilities enumerated by the statute. 15 U.S.C. §§ 1681n, 1681o. Trans Union does not dispute it is a consumer reporting agency within the meaning of the FCRA and subject to liability thereunder. *See* 15 U.S.C. § 1681a(f).

A. Section 1681e(b) Claim

Plaintiff's first FCRA claim is brought under 15 U.S.C. § 1681e(b), which requires consumer reporting agencies "follow reasonable procedures to assure maximum possible accuracy" when preparing a consumer report. Although a showing of inaccuracy is an essential element of a claim under § 1681e(b), the FCRA does not impose strict liability for incorrect information appearing on an agency's credit reports. *See Spence v. TRW. Inc.*, 92 F.3d 380, 382–83 (6th Cir.1996). Liability flows only from a "failure to follow (1) reasonable procedures (2) to assure maximum possible accuracy of the information (3) concerning the individual about whom the information relates." *Bryant v. TRW. Inc.*, 689 F.2d 72, 78 (6th Cir.1982). The exercise of reasonable care is determined by reference to what a reasonably prudent person would do under the circumstances. *Id.* In order to assert a claim under § 1681e(b), a plaintiff must prove: (1) the defendant reported inaccurate information about the plaintiff; (2) the defendant either negligently or willfully failed to follow reasonable procedures to assure maximum possible accuracy of the information about the plaintiff; (3) the plaintiff was injured; and (4) the defendant's conduct was the proximate cause of the plaintiff's injury. *Morris v. Credit Bureau of Cincinnati, Inc.*, 563 F.Supp. 962, 967 (S.D.Ohio 1983). *See also Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir.1996).

Trans Union does not dispute the information it reported was inaccurate nor does it appear to contest Nelski suffered at least some cognizable injury. As a result, the case turns on the reasonableness of Trans Union's procedures. The district court concluded Nelski had not established the elements of a claim under § 1681e(b) because she had failed to show Trans Union's procedures were unreasonable in any way. The district court recounted the evidence submitted by Trans Union regarding its procedures in generating credit reports and summarized them as follows:

> Trans Union requires contributors to agree to provide accurate data and accepts information from only those contributors. Data is transmitted via tape, called the "Metro Format," which [Trans Union Director of Customer Information Services Bill] Stockdale represents is the credit industry standard. The tapes are reviewed for errors prior to being loaded on Trans Union's database. Afterwards, the data is processed using proprietary algorithms, designed to combine data from different creditors to create a credit report file for each individual consumer. Creditors submit updated information by submitting a Universal Data Form either by mail or electronically to Trans Union's data services center. All changes are manually added to Trans Union's database. Trans Union similarly set forth the pro-

cedures it employs to investigate consumer disputes of inaccurate data.

*Nelski v. Ameritech Services, Inc., et al.,* No. 01–CV–70704–DT, Order Granting Defendant's Motion for Summary Judgment, at 10–11 (E.D.Mich. Sept. 4, 2002) (internal citations omitted). The district court noted Nelski had not presented any argument relating to the unreasonableness of these procedures. Similarly, in her appellate brief, Nelski takes issue with neither Trans Union's representations nor the district court's findings regarding the actual procedures employed by Trans Union.

█ Instead, Nelski relies on a series of loosely related theories to create an inference Trans Union's procedures were unreasonable. First, Nelski contends Risk Management notified Trans Union in July 1999 "that your Plaintiff's account was to be deleted from their credit report," but Trans Union was still reporting the Ameritech account in February 2000. Brf. of Appellant at 8–11. Therefore. Nelski argues, it can be inferred Trans Union failed to employ reasonable procedures. As a legal matter, such an argument is viable. Generally, a plaintiff need not point to specific deficiencies in an agency's practices or procedures. *See Morris,* 563 F.Supp. at 968 ("it is not plaintiff's burden to suggest ways in which defendant might improve its operation"). Therefore, the simple inference articulated by Nelski would probably be sufficient to survive summary judgment if it were supported in any way by the facts. Nelski alleges Risk Management "claims" and has "produced [supporting] documentation" it informed Trans Union in July 1999 the Ameritech account should be deleted. Brf. of Appellant at 9–10. In support of this proposition. Nelski cites the computer print out of Risk Management's file log for Account

No. 550228 and the deposition testimony of Kristin Scott, a Risk Management employee, explaining the notations therein. As articulated *supra,* the entries in Risk Management's file log for Account No. 550228 show the "TU Credit report flag" on that account had been changed on July 1, 1999, to indicate the account should be deleted and again on July 15, 1999, to indicate it should be removed. However, such facts do not constitute proof of unreasonable conduct on the part of Trans Union. The change on the account flags related *only* to Account No. 550228. Trans Union appears to claim, at least from July 1998. it only had record of one overdue Ameritech/RMA account, numbered 1967990. Brf. of Appellee at 6. However, even assuming Trans Union was reporting an Account No. 550228, Nelski has presented no evidence Trans Union did not delete that account in July 1999.[2] Therefore, contrary to Nelski's representations, there is no evidence Risk Management instructed Trans Union to delete Account No. 1967990 at any time prior to March 7, 2000.

In her second theory, Nelski suggests Risk Management notified Trans Union the two accounts should be merged in 1998 and Trans Union's failure to do so is evidence of unreasonable procedures. However, the only evidence Nelski has presented in support of this assertion is Scott's deposition. Scott testified it was Risk Management's policy and normal procedure after the 1998 merger with Abacus to send the various credit reporting agencies a notice informing them of the merger and asking them to delete the old account number and replace it with the new one. Scott did not produce any proof or claim any first-hand knowledge this did, in fact, oc-

---

**2.** The credit report obtained by Nelski from Trans Union on February 3, 2000, does not list Account No. 550228, suggesting it was, in fact, properly deleted if, indeed, it ever existed on Trans Union's records at all.

cur. She did, however, speculate, after considerable provocation, that this had happened, proof did exist somewhere, and Trans Union had just never deleted the account. Thus, Scott's testimony was pure speculation without any corroborating evidence. Nelski additionally points out "Trans Union could not testify to or acknowledge through interrogatories the fact that Risk Management did not send them notification that they merged with Abacus." Brf. of Appellant at 17. Of course, requiring Trans Union to prove a negative would shift the burden of proof on an essential element of the underlying claim. It is ultimately incumbent upon Nelski to prove Trans Union did receive notice of the merger: Trans Union does not have to prove it did not. In any event, Trans Union asserts its "CIS tracking system archives" reveal no request from Risk Management regarding the merger of Abacus accounts. Thus, the only proof Nelski has offered is Scott's testimony to the effect it was Risk Management's policy and or practice to so notify the various credit agencies and, therefore, Trans Union *should have been* notified. Unsubstantiated speculation is not enough to create a genuine issue of material fact on which a jury could reasonably find for Nelski. *See Am. Road Serv. Co. v. Consol. Rail Corp.,* 348 F.3d 565, 569 (6th Cir.2003). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) ("[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient").

Nelski's third and final theory posits Trans Union did merge the two accounts, yet failed to use the proper number (550228). In support of this theory, Nelski points to the June 15, 1999, letter she received from Risk Management referring to "RMA/ABACUS Account # : 550228," thus suggesting the accounts had been merged. Brf. of Appellant at 12. Nelski fails, however, to explain what relevance this correspondence *from Risk Management* has to the question of whether *Trans Union* had merged the accounts or been instructed to do so. Nelski also cites to the deposition testimony of Trans Union employee Steve Reger, alleging it shows Trans Union cannot "state to a certainty when [the] account was reported to them," thus inferring Trans Union's procedures are unreasonable. Brf. of Appellant at 12–15. To the contrary, Reger clearly stated the account "was reported on or about July of 1998." The only uncertainty expressed by Reger was as to the practices and procedures employed by Trans Union in verifying whether debts reported to it are valid, to which Reger indicated he was not the appropriate individual to testify.

In an attempt to buttress each of her three alternate theories of the events, Nelski contends the other two national credit reporting agencies, Equifax and Experian, produced accurate credit reports after June 1999, therefore implying Trans Union's conduct and procedures were somehow below the industry standard. Such evidence might have some relevance in determining whether Trans Union's procedures were reasonable and could even present a genuine issue of material fact. *See Cousin v. Trans Union Corp.,* 246 F.3d 359, 368 (5th Cir.2001) (noting the fact another agency's cloaking procedure effectively prevented the reappearance of erroneous information suggested defendant's cloaking procedure was unreasonable). However, not only has Nelski failed to provide any specific details (*i.e.,* what procedures Equifax and Experian employ which Trans Union does not), she has not even offered any evidence this was, in fact, the case. The only credit reports in the record are one obtained from Experian on May 24, 1999, and one obtained from Trans Union on February 3, 2000. There is no evidence or even an allegation Nelski also obtained reports from Experian and

Equifax on February 3, 2000, and those reports were accurate. Moreover, the May 24, 1999, credit report from Experian has entries for both accounts (550228 and 1967990), seemingly contrary to Nelski's second argument to the effect Risk Management had instructed the credit reporting agencies to merge the accounts and Trans Union had simply ignored that communication.

At oral argument, counsel for Nelski suggested reasonable procedures would have caused Trans Union to realize Account Nos. 550228 and 1967990 were one and the same based on the fact all other information associated with those two accounts was virtually identical. Nelski advanced a somewhat analogous argument in her brief, arguing specifically Trans Union is liable because it did not report information with the "maximum possible accuracy" by verifying debts with each creditor every time it released Nelski's report. *See* Brf. of Appellant at 18–20. Such measures are plainly not required by the FCRA. *See Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474 (2d Cir.1995) ("Prior to being notified by a consumer, a credit reporting agency generally has no duty to reinvestigate credit information.").

In conclusion, viewing the evidence and all inferences drawn therefrom in the light most favorable to Nelski, the most the Court can conclude is Risk Management changed the report flag on Account No. 550228 on July 1, 1999. and Trans Union deleted Account No. 550228 sometime between then and February 3, 2000, but did not delete or merge Account No. 1967990. This does not establish a claim under § 1681 e(b)—Trans Union did everything it was instructed to do. Nelski has failed to establish a violation of § 1681e(b). much less a negligent or willful one. Accordingly, the district court was correct in granting summary judgment in favor of Trans

Union on Nelski's claim under 15 U.S.C. § 1681e(b).

**B. Section 1681i**

Nelski's second FCRA claim alleges Trans Union failed to properly investigate matters once Nelski disputed the information on her credit report. The FCRA imposes the following duty to reinvestigate disputed information:

> If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30–day period beginning on the date on which the agency receives the notice of the dispute from the consumer.

15 U.S.C. § 1681i(a)(1)(A). The district court granted summary judgment after finding Nelski had not presented sufficient evidence to create a question of material fact as to the promptness of Trans Union's actions in February and March 2000.

The parties appear to agree Trans Union deleted the final vestige of the fraudulent Ameritech account (specifically, Account No. 1967990) on March 28, 2000. A dispute arises, however, as to when Trans Union received the letter from Nelski disputing the information and, thereby, commencing the thirty-day period during which Trans Union was obligated to act. Trans Union claims it received the letter on February 28, 2000. Nelski claims she sent the letter on February 8, and a delay in delivery of twenty days is "outside of reasonableness." Brf. of Appellant at 20–21. The district court found no genuine issue of material fact since Trans Union's copy of the letter was time-stamped "Re-

ceived" on February 28 and Nelski had offered only a "bare assertion ... it was inconceivable" the letter did not arrive earlier. Nelski maintains on appeal the "issue still remains one of credibility" which should be submitted to a trier of fact. Brf. of Appellant at 21. This might be so if Nelski had a post-marked envelope or a certified mail receipt, but she has offered no evidence other than the date borne on the letter itself (February 8). At best, this might create an issue of fact as to when she wrote the letter, but it is not very probative of when the letter was mailed or received. Nelski herself has not specifically testified she *mailed* the letter on February 8. Even if a jury were to conclude it was objectively beyond belief the United States Postal Service could have taken 20 days to deliver a letter from Nelski's residence in Michigan to Trans Union's data services center in Mississippi, there is proof indicating the letter was, in fact, received on February 28, but no corresponding proof the letter was, in fact, mailed on February 8. Therefore, a reasonable juror would have no choice but to conclude the letter was mailed sometime after February 8 and received on February 28. Nelski has not presented evidence sufficient to allow a reasonable jury to interpret the events in any other fashion, thus, summary judgment was appropriate.

## IV. CONCLUSION

For the reasons set forth above, we AFFIRM the district court's grant of summary judgment in favor of Trans Union in all respects.