**Carin MILLER, Plaintiff–Appellant,**

v.

**TRANS UNION, LLC, Defendant–Appellee.**

No. 15–3240.

United States Court of Appeals, Sixth Circuit.

March 16, 2016.

Before: SUHRHEINRICH and MOORE, Circuit Judges; LUDINGTON, District Judge.*

LUDINGTON, District Judge.

Appellant Carin Miller appeals the decision of the district court to grant summary judgment to Appellee Trans Union, LLC.[1] She claims that a "credit monitoring report" furnished to her by TransUnion Interactive, LLC, ("TUI") on October 3, 2013 ("October 2013 Report" or "Report") violates the Fair Credit Reporting Act ("Act"), 15 U.S.C. § 1681 *et seq.* On appeal she argues that the district court erred in concluding that the Report is not governed by the Act and that it was not furnished by Trans Union. In response, Trans Union makes the arguments it has made repeatedly below: it did not furnish the October 2013 Report so it cannot be liable for any violation of the Act, though it maintains the Report is not regulated by the Act and therefore did not violate the Act.

Because the October 2013 Report is not governed by the Fair Credit Reporting Act and because it was furnished to Miller by TUI and not Trans Union, we affirm.

## I.

Appellant Carin Miller, Plaintiff below, is a resident of Ohio and a consumer as that term is defined in 15 U.S.C. § 1681a(c). Am. Compl. ¶ 3, Page ID 282. Appellee Trans Union, Defendant below, is a Delaware corporation principally located in Chicago, Illinois. Answer ¶ 6, Page ID 861. Trans Union is a consumer reporting agency as that term is defined in 15 U.S.C. § 1681a(f). *Id.*

### A.

Miller filed a complaint against Trans Union and five other defendants on March 26, 2013. In addition to Trans Union, Miller named as defendants: Experian Information Solutions, Inc., and Equifax, Inc., two other consumer reporting agencies; Wites & Kapetan, P.A., a law firm offering debt settlement services; Infinity Marketing Solutions, Inc., a company that allegedly "harvests and sells data," Compl. ¶ 8, Page ID 3, from consumer reporting agencies; and a Doe debt collector that was never identified.

Miller was a regular user of credit cards and accumulated an outstanding balance on one or more of those cards in the amount of $16,000. Wites & Kapetan sent a letter to Miller on March 28, 2011 offering to assist her in the settlement of her debts. The letter stated that Wites & Kapetan had "obtained your name and address from a data company, which indicates that you may have approximately 16,000 [sic] in unpaid credit card bills and/or other unsecured debt." W & K Letter, Page ID 7. The letter advised Miller

---

* The Honorable Thomas L. Ludington, District Judge for the Eastern District of Michigan, sitting by designation.

1. Trans Union's corporate name is written by the parties (and in third party information appearing in the record) alternatively as Trans Union and TransUnion. Trans Union's website and corporate branding do not include a space between the two words, writing the name "TransUnion." In its papers, however, it uses the form "Trans Union." That will be adopted throughout. Some quotes retain the form TransUnion as used in the original. They have not been altered.

that Wites & Kapetan "do[es] not have any other information regarding your situation." *Id.* That proviso included a footnote reading: "To further explain, we do not have your social security number, account names or numbers, your Credit Report, or any other information about you other than what is indicated in this letter." *Id.* Miller assumed Wites & Kapetan had gained access to her credit report, despite the fact that Wites & Kapetan explained that it did not have her credit report. Nevertheless, and with no more information, Miller filed her complaint.

In her complaint, Miller alleged that the consumer reporting agency defendants furnished consumer credit reports without a permissible purpose in violation of §§ 1681b & 1681e(a) of the Act. Defendants Wites & Kapetan, Infinity, and Doe allegedly purchased Miller's debt information which, Miller suggested, Wites & Kapetan ultimately used to offer her debt settlement services. She further alleged that defendants Wites & Kapetan, Infinity, and Doe committed the tort of invasion of privacy, specifically by intruding upon her seclusion, when they acquired her information from the consumer reporting agency defendants.

2. Miller moved to amend on June 2, 2014. Mot. Amend, Page ID 275–80. Trans Union had until June 26, 2014 to respond to Miller's motion. Before Trans Union could respond, however, the district court granted Miller's motion on June 16, 2014. Trans Union moved for reconsideration, explaining that it did not have an opportunity to respond to Miller's motion and arguing that Miller's amendment would be futile because it would not survive a motion under Federal Rule of Civil Procedure 12(b)(6). The district court cursorily denied Trans Union's motion, citing the fact that leave to amend should be freely given under Federal Rule of Civil Procedure 15(a)(2).

3. Defendant Wites & Kapetan was dismissed from the case by stipulation on June 13, 2014, before Miller was granted leave to amend her

**B.**

Miller then filed an amended complaint. Since the amended complaint was untimely, it was initially stricken, but the district court granted Miller leave to amend on June 16, 2014.[2] Around the time Miller amended her complaint, Experian and Equifax were dismissed by stipulation. At that point, Trans Union was the only remaining consumer reporting agency defendant and the only active defendant left in the case.[3] Miller's amended complaint stated a new claim against Trans Union. This claim was predicated on a report that Miller alleged she requested from Trans Union on October 3, 2013, over six months after her initial complaint was filed.

**1.**

Miller's amended complaint contained allegations that originated with a credit offer Miller received in the mail. On August 15, 2013, she received from Mobiloans what she describes as "a prescreened offer of credit" based on information in her credit report. Am. Compl. ¶¶ 22–23, Page ID 285. The Mobiloans offer included a "Prescreen & Opt–Out Notice" that read,

complaint. Defendant Experian likewise was dismissed by stipulation on June 16, 2014, the day the district court granted Miller's motion to amend. Miller filed a notice of settlement as to Defendants Equifax and Equifax Information Services, LLC, on June 19, 2014. Equifax Information Services was not originally a party to the case but was added by Miller in her amended complaint. Defendant Infinity had default entered against it by the Clerk of Court on January 10, 2014, and the district court granted Miller's motion for a default judgment on April 13, 2015. The Doe defendant was never identified. Thus, by the time Trans Union's motion for reconsideration challenging Miller's amended complaint was filed, Trans Union was the only active defendant remaining.

in part: "If you do not want to receive prescreened offers of credit from this and other companies, call the consumer reporting agencies toll-free at 1–888–5OPT–OUT (1–888–567–8688), or visit the website at, www.optoutrequest.com; or write: TransUnion Opt–Out Request, P.O. Box 505, Woodlyn, PA 19094–0505." Mobiloans Offer, Ex. E, Am. Compl., Page ID 386. Because the Mobiloans offer included a Trans Union opt-out address, Miller assumed that Mobiloans must have obtained her credit report from Trans Union.

Miller then sought to obtain a consumer disclosure of her credit file to review the suspected Mobiloans credit inquiry. Although Miller initially navigated to the Federal Trade Commission website and then to annualcreditreport.com, she admits that she eventually navigated away from annualcreditreport.com and "went to a TransUnion website." Miller Dep. 73, Page ID 1536. What she ordered was the October 2013 Report from TUI. The Report bears the name and logo of Trans Union at the top, but the printed root URL in the footer is, https://tui.transunion.com. Oct. 2013 Rep., Ex. A, Am. Compl., Page ID 294. In addition, Miller received a receipt for the Report sent from the email address, transunion@e-tui.transunion.com. Miller Dep. 74, Page ID 1536. To obtain the type of report Miller obtained, a user must also enter into a service agreement with TUI. That service agreement begins: "Welcome to the TransUnion Interactive web site, tui.transunion.com[.]" Service Agreement 1, Page ID 1546.

TUI, the furnisher of the October 2013 Report, is a wholly-owned subsidiary of Trans Union that is in the business of providing consumers a tool to monitor their own credit information as though they were a third party, a distinctly different product from that offered by Trans Union. Simms Dep. 98–99, Page ID 1505–06. Thus, when a consumer requests a "credit monitoring report" (what TUI titles its reports), TUI furnishes a report that reflects the information a third party would receive if it solicited his or her consumer credit report, as that term is defined in 15 U.S.C. § 1681b. *Id.* TUI compiles these reports by requesting credit information from Trans Union in the same way any other third-party user seeking consumer credit information would: by requesting it and having the request logged on Trans Union's records. *Id.* at 104, Page ID 1509 ("[TUI] acts as a person requesting a regular credit report."). TUI's reports omit promotional inquiries, such as that from Mobiloans,[4] because those inquiries cannot be disclosed on a credit report obtained by a third party. *Id.* at 97–98, Page ID 1504–05. *See also* 15 U.S.C. § 1681a(d)(2)(B) (prohibiting from inclusion in consumer reports "any authorization or approval of a specific extension of credit directly or indirectly by the issuer of a credit card or similar device").

Promotional inquiries, also known as "soft inquiries," only appear in consumer disclosures under § 1681g. *See* 15 U.S.C. § 1681g(a)(5) (requiring disclosure to the consumer of "[a] record of all inquiries received by the agency during the 1–year period preceding the request that identified the consumer in connection with a credit or insurance transaction that was not initiated by the consumer"). Consumer disclosures are obtained directly from

---

4. That is, if Mobiloans had requested Miller's credit report from Trans Union, Trans Union would retain a record of the request, but the request would not appear in the TUI report. There is no evidence in the record that Mobiloans requested Miller's credit report from Trans Union.

consumer reporting agencies, such as Trans Union, by requesting a consumer disclosure from annualcreditreport.com. *Id.* at 90–92, Page ID 1500–02. Consumer disclosures include soft credit inquiries, such as the hypothetical Mobiloans inquiry. *Id.* Trans Union has no record of Miller requesting a consumer disclosure through annualcreditreport.com on October 3, 2013 or at any other time. *Id.*

### 2.

Upon review of the October 2013 Report, the Mobiloans inquiry that Miller assumed she would see was not reflected. Miller believed that the Act required the October 2013 Report to disclose the fact that Mobiloans obtained her credit report from Trans Union—although her only evidence that Mobiloans had obtained her report was the opt-out mailing address listed in the offer from Mobiloans.

On the basis of this belief, Miller amended her complaint to assert that Trans Union violated the Act by not disclosing a credit inquiry from Mobiloans in the October 2013 Report. Miller asserted in her amended complaint that the October 2013 Report is a "consumer disclosure" governed by § 1681g and that it was furnished to her by Trans Union. By omitting the promotional credit inquiry, Miller claimed, Trans Union violated § 1681g of the Act that requires that consumer disclosures include all promotional inquiries

from the year preceding the consumer's request for the disclosure. Miller did not invoke § 1681g in her amended complaint but she alleged that Trans Union violated the Act.

Trans Union argued in its motion for reconsideration that Miller's claims are without merit because it did not provide the Report.[5] Rather, Trans Union claimed, the Report was furnished by TUI, a wholly-owned subsidiary of Trans Union. *See* Mot. for Recons., Page ID 551. Trans Union further explained in its motion for reconsideration that the October 2013 Report is not subject to the Act because it is not a consumer disclosure. Trans Union's motion was denied, and it answered the amended complaint on July 21, 2014. Trans Union did not move to dismiss Miller's amended complaint. Despite Trans Union's claims, Miller did not seek to join TUI in the lawsuit.

### C.

On August 22, 2014, Miller moved for summary judgment. She repeated the claims in her complaint and argued that there could be no reasonable dispute of fact that the October 2013 Report was furnished to her by Trans Union. Further, she argued that there could be no reasonable dispute of fact that the Report omitted a series of credit inquiries made into her account in the year prior to October 3, 2013.[6] Lastly, because Trans Union

---

**5.** Trans Union also argued that leave to amend should not be granted because Miller unnecessarily delayed in bringing her amended claims and Trans Union would be prejudiced by the amendment.

**6.** Miller learned of these other promotional inquiries after Trans Union provided her two actual consumer disclosures in June and July of 2014. These disclosures were not requested by Miller, but were produced in discovery. When comparing the two reports she noted that some of the promotional inquiries in the

June and July 2014 consumer disclosures were made in the year preceding October 3, 2013 but that they were not included in the October 2013 Report.

Despite these allegations, the only claim Miller makes in her amended complaint is that the October 2013 Report omitted the August 2013 promotional inquiry from Mobiloans. The other inquiries, omitted from Miller's complaints, cannot form the basis for recovery in this case, having not been pled. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

issued the Report (so Miller argued) and did not include the credit inquiries, it willfully violated the Act, meaning Miller is entitled to statutory damages, punitive damages, and attorney's fees.[7]

Trans Union responded by repeating what had become its refrain below: it did not issue the October 2013 Report; even if it did, the Report is not governed by the Act; and, again, even if it were, Trans Union did not willfully violate the Act. Trans Union relied predominantly on the absence of any evidence supporting Miller's claims. First, Trans Union pointed out that the web address on the report contained the abbreviation "tui" for Trans Union Interactive, the actual issuer of the Report. Second, Trans Union argued that Miller herself admitted in her deposition that she did not obtain the October 2013 Report from annualcreditreport.com but that she actually navigated away from the website and could not remember whence she requested the Report. Finally, Trans Union cited the high standard that a plaintiff must meet to prove a willful violation of the Act and argued that Miller produced no evidence to meet that standard.

The district court denied Miller's motion for summary judgment. It held, in relevant part, that there was a genuine dispute of material fact over whether the October 2013 Report was furnished to Miller by Trans Union. The district court noted the presence of the "tui" abbreviation in the Report's URL and in the email address that sent her a receipt for the Report. Because a jury could find that the Report was furnished by TUI, not Trans Union, the district court concluded that Miller was not entitled to summary judgment.[8] Again, despite these claims, Miller did not seek to join TUI in the proceeding.

## D.

On November 18, 2014, Trans Union filed a motion for summary judgment. It claimed that Miller's original argument—that Trans Union provided third parties with her credit report without a proper purpose under § 1681b—was meritless because there was no evidence that any of the non-consumer-reporting-agency-defendants requested information from Trans Union. Next, Trans Union once again repeated its claims that there is no evidence connecting it to the October 2013 Report for purposes of liability under the Act. In the alternative, Trans Union argued that if it could be said to have furnished the October 2013 Report, it did so in compliance with the Act or, at a minimum, did not willfully violate the Act.

Miller offered no argument in response to Trans Union's claim that it did not disclose her credit report to third parties

555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (holding that Federal Rule of Civil Procedure 8(a)(2) requires "giv[ing] the defendant fair notice of what the ... claim is and the grounds upon which it rests" (internal quotation marks and citations omitted)).

7.  Miller had, in her complaints, made claims for actual damages, but she abandoned those claims during the course of discovery and did not pursue them in her motion for summary judgment.

8.  The district court also reached conclusions concerning the June and July 2014 consumer reports. It concluded that Miller may have been entitled to summary judgment concerning the June 2014 consumer report but not the July 2014 consumer report. The district court did not enter summary judgment in Miller's favor, however, because she did not demonstrate willful noncompliance. The district court later corrected its position as to the June and July 2014 consumer reports and held that they could not give rise to liability under the Act because Miller did not request them. In addition, any conclusions concerning the June and July 2014 consumer reports are irrelevant because Miller did not plead any claims concerning those reports.

and, in any event, did not do so without a proper purpose. In response to Trans Union's arguments that it did not violate § 1681g, Miller repeated claims she had previously made about the October 2013 Report: she did in fact request the Report through annualcreditreport.com [9]; she requested it from Trans Union; and the Report, which she again claimed is a "consumer disclosure," omitted inquiries from the year prior to her request for the Report.

The district court granted Trans Union's motion. It held that the October 2013 Report is unambiguous: it was produced by TUI, not by Trans Union. Trans Union Interactive, the district court also concluded, is not a consumer reporting agency, so the October 2013 Report could not be a consumer disclosure.[10] Finally, the district court explained that even if Trans Union were subject to liability under the Act, there is no evidence that any violation alleged by Miller was willful. The district court entered summary judgment against Miller.

Miller timely appealed the district court's judgment. Miller's notice of appeal reads:

> Notice is hereby given that Carin Miller, Plaintiff in the above named case, hereby appeals to the United States Court of Appeals for the Sixth Circuit from the Amended Entry and Order Overruling Miller's Motion to Strike and Granting Trans Union's Motion for Summary Judgment, Doc. No. 102, entered in this action on February 19, 2015.

Notice of Appeal, Page ID 2019.

### E.

"Congress enacted FCRA [the Fair Credit Reporting Act] in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007). The Act governs the type of credit information that consumer reporting agencies, such as Trans Union, must disclose to consumers, such as Miller. *See* 15 U.S.C. § 1681g. The Act also governs when a consumer reporting agency may disclose a consumer credit report to third parties, such as the non-consumer-reporting-agency-defendants below. *See* 15 U.S.C. § 1681b. Congress's purpose in enacting the Act was:

> ... to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

15 U.S.C. § 1681(b). To the extent ambiguities reside in the text of the Act, it "is to be liberally construed in favor of the

---

9. Although admitting in her deposition that she navigated away from annualcreditreport.com, Miller included an affidavit with her motion for summary judgment wherein she argued for the first time that she indeed requested a consumer disclosure directly from Trans Union through, www.transunion.com. Miller Aff. ¶ 2, Pl.'s Mot. Summ. J., Page ID 919.

10. Even if Trans Union Interactive were a consumer reporting agency, and the October 2013 Report could be characterized as a consumer disclosure, it is not clear what would follow since Trans Union Interactive is not a party to the litigation below. The only import of those two conclusions would be upon a further conclusion that Trans Union Interactive is merely an alter ego of Trans Union. The district court did not reach that issue because the issue was not advanced by Miller.

consumer[.]" *Jones v. Federated Fin. Reserve Corp.,* 144 F.3d 961, 964 (6th Cir. 1998).

## II.

"We review the district court's grant of summary judgment *de novo.*" *Bickley v. Dish Network, LLC,* 751 F.3d 724, 728 (6th Cir.2014). A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The focus must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Walton v. Ford Motor Co.,* 424 F.3d 481, 485 (6th Cir.2005) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## III.

■ Miller makes only one claim on appeal: that there is a genuine dispute as to whether the actions of Trans Union violated the consumer disclosure provisions of the Act, 15 U.S.C. § 1681g. Although Miller lists a number of issues in her brief, this appeal turns on whether the district court erred in concluding that no reasonable juror could find that Trans Union violated the Act when TUI provided Miller a credit monitoring report on October 3, 2013. It did not.

### A.

Miller claims that the credit monitoring report she received from TUI, despite the name given it by TUI, was in fact a consumer disclosure governed by § 1681g of the Act. In support of this argument Miller reasons that she is a consumer and that the credit monitoring report was disclosed to her, ergo it is a consumer disclosure. Although Miller is indeed a consumer, a fact that is not in dispute, the Act requires more than merely making a disclosure to a consumer for the transaction to be regulated by the Act. Adopting Miller's broad interpretation would require ignoring the phrase "[e]very consumer reporting agency shall" that begins subsection 1681g(a) of the Act. Indeed, § 1681g of the Act requires that a consumer reporting agency make consumer disclosures. Disclosures not made by consumer reporting agencies are thus not consumer disclosures for the purposes of § 1681g.

Miller brings her claim under § 1681g(a)(5) of the Act. That section requires that any consumer disclosure include a record of all credit inquiries identifying the consumer over the previous year. Section 1681g(a) reads, in pertinent part:

(a) Information on file; sources; report recipients

Every consumer reporting agency shall, upon request, and subject to section 1681h(a)(1) of this title, clearly and accurately disclose to the consumer:

(1) All information in the consumer's file at the time of the request ...

. . .

(5) A record of all inquiries received by the agency during the 1–year period preceding the request that identi-

fied the consumer in connection with a credit or insurance transaction that was not initiated by the consumer. 15 U.S.C.A. § 1681g. The statute's text is unambiguous. Section 1681g(a) applies only to "consumer reporting agencies." A threshold matter, then, is whether Miller received the TUI credit monitoring report from a "consumer reporting agency." If she did not, there can be no liability under § 1681g.

Trans Union admits that it is a consumer reporting agency. Answer ¶ 6, Page ID 861. *See also Nelski v. Trans Union, LLC,* 86 Fed.Appx. 840, 844 (6th Cir.2004) ("Trans Union does not dispute it is a consumer reporting agency within the meaning of the FCRA and subject to liability thereunder."); *Trans Union LLC v. F.T.C.,* 295 F.3d 42, 46 n. 1 (D.C.Cir.2002) (noting that the parties agree Trans Union is a consumer reporting agency). It contests, however, that it furnished the October 2013 Report to Miller. For her part, Miller now concedes that Trans Union did not furnish her the report directly. Below, however, Miller argued, without any supporting evidence, that the report was directly ordered from and provided by Trans Union.

### 1.

All evidence in the record, exclusive of an affidavit filed by Miller, supports the conclusion that she requested the October 2013 Report from TUI, which furnished it directly to her. The copy of the October 2013 Report that she attached to both her Amended Complaint and her affidavit reflects that it was printed from a webpage containing the root URL, https://tui.transunion.com. *See* Report, Ex. A, Am. Compl., Page ID 294–304; Ex. A, Miller Affidavit, Page ID 924–34. Further, the email she received confirming that she ordered the October 2013 Report came from

transunion@e-tui.transunion.com. *See* Email, Page ID 1557–59; *see also* Miller Dep. at 74, Page ID 1536 (Miller confirming that this document was "an e-mail that I received with my receipt from TransUnion"). During her deposition, Miller seemed unsure of the precise path she took to obtain the October 2013 Report, confirming that she navigated away from the Annual Credit Report website, and stating "I believe I went to a TransUnion website." Miller Dep. 73, Page ID 1536. In a subsequent affidavit, Miller seemed to identify the precise source of the October 2013 Report as "www.transunion.com," Miller Aff. ¶ 2, Page ID 919, but that portion of the affidavit referred to an exhibit, which contains a notation on each page that it was printed from the following URL: "https://tui.transunion.com/products/merge/ viewPrintableReportSingle?printView=true." Ex. A, Miller Aff., Page ID 924–34. Drawing all inferences in favor of Miller, the non-movant, this is not sufficient to create a factual dispute. Miller admitted that she navigated away from the Annual Credit Report website, and both the version of the October 2013 Report that she submitted to the district court and the e-mail she admitted to receiving as a receipt for that Report contain the URL identifying TUI as the source of the October 2013 Report.

### 2.

Perhaps acknowledging that all of the evidence supports the conclusion that the October 2013 Report came from TUI, Miller argues on appeal that the October 2013 Report was furnished to her by Trans Union *through* TUI. *See* Appellant Br. 19 ("TransUnion's own evidence shows the October 2013 Report came from TransUnion and was merely delivered to Miller via TUI."). The evidence Miller relies upon does not support her latest assertion.

■ First, Trans Union and Trans Union Interactive are two separate legal entities. Miller has alleged nothing to justify imposing any potential liability of TUI onto Trans Union. Indeed, for the first time on appeal Miller argues that TUI is a mere alter ego of Trans Union and nothing more than the avenue by which Trans Union delivered the October 2013 Report to her. Below Miller argued exclusively that Trans Union directly furnished her the October 2013 Report. To the extent Miller did not present an alter ego argument to the district court, she has waived her right to do so now. *See, e.g., Dice Corp. v. Bold Techs.*, 556 Fed.Appx. 378, 384 (6th Cir.2014).[11]

Second, the June 4, 2014 and July 31, 2014 consumer disclosures [12] provided in discovery by Trans Union reflect that the October 2013 Report was prepared and furnished by TUI. The account review inquiry entries on the June 2014 and July 2014 consumer credit reports read: "CARIN REBECCA MILLER via TRANSUNION INTERACTIVE I ..., Permissible Purpose: CREDIT MONITORING, Requested On: 10/03/2013." June 4, 2014 Consumer Credit Report 9, Page ID 943;

July 31, 2014 Consumer Credit Report 9, Page ID 952. For reasons not explained in her brief, Miller argues that this entry means that "TransUnion's own records show that TransUnion disclosed the October 2013 Report[.]" Appellant's Br. 20. It is unclear how the notations of "TRANSUNION INTERACTIVE I" in the two consumer credit reports produced in discovery actually refer to Trans Union and not TUI. The answer is that the October 2013 Report was compiled by TUI not Trans Union. In preparing the October 2013 Report TUI requested credit information from Trans Union, hence the notation. It did so no differently than any other third-party user that would request credit information from Trans Union. TUI is in the business of allowing consumers to view their credit report in the same way a third-party making a credit decision about the consumer would. *See* Simms Dep. 104, Page ID 1509 ("They [ (TUI) ] come into our institution as any other person ... requesting a credit report.").

Unlike TUI, Trans Union is a consumer reporting agency. A credit report agency is statutorily defined at 15 U.S.C.

---

11. Even if we were to reach the merits of this claim, it would not succeed. There is insufficient information in the record to determine what law would apply to the question of disregarding TUI's separate corporate form. But in general, this Court examines four different factors when determining whether to disregard the corporate form: "(1) the absence of normal corporate formalities; (2) commingling of personal and corporate funds; (3) siphoning of corporate funds by a dominant stockholder; and (4) the fact that the corporation is merely a facade for the personal operations of the dominant stockholder." *Scarff Bros., Inc. v. Bischer Farms, Inc.*, 386 Fed. Appx. 518, 525 (6th Cir.2010) (quoting *United States v. Walton*, 909 F.2d 915, 928 (6th Cir. 1990) (internal citations omitted)). None of these factors are alone dispositive and each case turns on its individual facts. *Id.* Here, no facts have been developed that would justi-

fy disregarding·TUI's separate corporate entity. Miller has identified nothing other than the fact that TUI is a wholly-owned subsidiary of Trans Union to support her claim that Trans Union should be subject to any potential liability of TUI stemming from the October 2013 Report.

12. The parties do not contest that these are consumer disclosures in the form required by 15 U.S.C. § 1681g. They do not fall under the consumer disclosure provision of the Act because they were not requested by Miller. Rather, they were produced in discovery. Miller originally attempted to use these two disclosures against Trans Union below, but the district court eventually held that they do not create liability on Trans Union's part because Miller did not request them. Miller does not challenge that conclusion on appeal.

§ 1681a(f). Trans Union is in the business "assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f) (defining "consumer reporting agency"). *See also* Answer to Am. Compl. ¶ 6, Page ID 861.

Third, ample evidence in the October 2013 Report supports the conclusion that TUI furnished the document to Miller without involvement from Trans Union. As already noted, *supra* § III.A, the root URL on the document is, https://tui. transunion.com. Also already noted, the receipt that Miller received for the October 2013 Report was from the email address transunion@e-tui.transunion.com. Miller rightly points out that certain aspects of the October 2013 Report could lead one to believe that it came from Trans Union. But merely sharing corporate trademarks between affiliated entities without more is insufficient to justify disregarding TUI's separate corporate form. In any event, any doubt Miller may have had about what corporate entity she was engaging should have been dispelled by the Service Agreement she would have encountered while ordering the October 2013 Report. The Service Agreement opens by welcoming the user "to the TransUnion Interactive website, tui.transunion.com[.]" Service Agreement 1, Page ID 1546. Miller argues that this is a click-wrapper agreement that no reasonable person would read when requesting such a report. This may be. But it was Miller who elected not to read the Service Agreement. Her lack of knowledge about the contents of the agreement does not perforce obliterate the legal distinctions between Trans Union and TUI. The language in the Service Agreement is additional evidence that the Report was requested from and furnished by TUI. Miller's knowledge of the text of the Service Agreement, or lack thereof, does not alter that fact.

No reasonable juror could conclude that Trans Union furnished the October 2013 Report to Miller. Accordingly, Trans Union could not have violated the Act's provisions governing consumer disclosures.

### 3.

■ Miller argues, in the alternative and for the first time on appeal, that TUI is itself a consumer reporting agency. Since Miller raised this argument for the first time on appeal, it has been waived and need not be addressed. *See Dice Corp.*, 556 Fed.Appx. at 384. In any event, TUI is not a party to this case, so it is not clear what such an argument would accomplish. The argument is nevertheless meritless.

The Act defines consumer reporting agencies as:

> ... any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f). Miller has offered no proof that TUI fits within this definition other than her own assertion in her brief that it does. *See Cheatham v. McCormick*, 100 F.3d 956, 1996 WL 662887, at *4 (6th Cir.1996) (dismissing appellant's claims under the Act in part because he offered no proof that appellee was consumer reporting agency as defined by § 1681a(f)). The record reflects only the limited fact that TUI is in the business of providing consumers their own credit in-

formation as it would appear in a credit report issued to a third party. Simms Dep. 98–99, Page ID 1505–06. Nowhere does the record reflect that TUI "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties[.]" 15 U.S.C. § 1681a(f). The record reflects the contrary. TUI had to request consumer credit information from a consumer reporting agency (Trans Union) before it could issue the October 2013 Report. *See, e.g.*, June 4, 2014 Consumer Credit Report 9, Page ID 943.

But even if TUI were a consumer reporting agency, absent a showing that it is merely an alter ego for Trans Union its status as a consumer reporting agency would be irrelevant. That is because Miller has not explained, and likely could not explain, why she would be entitled to recover from Trans Union for a violation of the Act committed by TUI. The only way she could do so is by demonstrating some reason to justify setting aside TUI's separate corporate identity. As explained above, *supra* § III.A.2, nothing in the record justifies doing so.

### 4.

Because the October 2013 Report was not issued by a consumer reporting agency, it is not a consumer disclosure under § 1681g. The district court properly entered summary judgment in favor of Trans Union.

### B.

■ Miller makes yet another argument for the first time on appeal: that the October 2013 Report is a "consumer report"—also known as a credit report—under § 1681a(d) of the Act. Yet again, this argument is waived and need not be addressed.

*See Dice Corp.*, 556 Fed.Appx. at 384. The claim is, once more, also meritless.

Under the Act a "consumer report" is defined as:

> . . . any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—
>
> (A) credit or insurance to be used primarily for personal, family, or household purposes;
>
> (B) employment purposes; or
>
> (c) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1). As with consumer disclosures, a consumer report must be furnished by a consumer reporting agency. Although Trans Union is such an agency, it did not furnish the October 2013 Report to Miller. This claim is meritless.

### IV.

As a final matter, the parties have each filed motions to strike that must be addressed. First, Trans Union moved to strike portions of Miller's opening brief that sought relief beyond the scope of her notice of appeal. Trans Union argues that under applicable Sixth Circuit law, Miller is confined to challenging the rulings of the district court that she identified in her notice of appeal. Since she only identified the district court's order granting Trans Union's motion for summary judgment, she cannot challenge its order denying her motion for summary judgment.

The motion was initially referred to a prior panel of this Court for disposition.

The panel concluded that Miller's request that this Court grant her motion for summary judgment is not the same as arguing substantive issues raised by her motion for summary judgment. *Miller v. Trans Union, LLC,* Case No. 15–3240 (6th Cir. August 27, 2015). Further, the panel noted that there is significant overlap between the issues raised in Miller's motion for summary judgment and Trans Union's motion for summary judgment. *Id.* The panel then referred the motion to this panel, determining that "the merits panel, upon the completion of briefing, will be better situated to determine if a partial dismissal is required." *Id.*

Trans Union's motion will be denied. In large part, Trans Union's motion is mooted by the appeal's lack of merit. But denial would still be warranted if the appeal did have merit because Miller, while aggressively attempting to raise new issues on appeal, does not raise arguments related to the district court's decision denying her motion for summary judgment. Trans Union correctly notes that she requests that this Court grant her summary judgment. But, as the prior panel rightly observed, "that is not the same as challenging the denial of that motion on the merits." *Id.*

Following Trans Union's motion to strike, Miller moved to strike ten pages of Trans Union's response brief. Although Trans Union had yet to file its response when Miller moved to strike, Miller sought anticipatory relief. She argued that Trans Union's motion to strike was improper because it raised a jurisdictional issue that should have been raised in its response brief. Since the motion was improper, Miller claimed, it should be considered an improper attempt to enlarge Trans Union's brief and Trans Union's brief should be accordingly shortened. Miller's motion will be denied.

The prior panel of this Court to which Trans Union's motion to strike was referred explained that Trans Union's motion was properly brought under Federal Rule of Appellate Procedure 27 as a challenge to jurisdiction. In addition, "our local rules permit motions to dismiss on jurisdictional grounds." *Id.* In any event, Trans Union's brief came in far under the word limit for briefs imposed by the Federal Rules of Appellate Procedure. Rule 32(a)(7)(B)(i) explains that principal briefs must not exceed 14,000 words. Trans Union's brief is 28 pages and 6,558 words. Granting Miller's motion, even if it were warranted, would bring her no relief since it would require striking pages that were not used.

### V.

Accordingly, the judgment of the district court is **AFFIRMED** and the parties' motions to strike are **DENIED**.