Kadiri APAMPA, Plaintiff–Appellant,

v.

Patrick LAYNG, George Jackson, III, and Daniel Dodds, Defendants–Appellees.

No. 97–1527.

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 4, 1998.

Decided Oct. 7, 1998.

Kadiri Apampa, Sandstone, MN, Pro Se.

James M. Kuhn (argued), Thomas P. Walsh, Office of the United States Attorney, Civil Division, Chicago, IL, for Defendants–Appellees.

James B. Speta (argued), Northwestern University Legal Clinic, Chicago, IL, Amicus Curiae.

Before POSNER, Chief Judge, and KANNE and DIANE P. WOOD, Circuit Judges.

POSNER, Chief Judge.

Shortly before pleading guilty to conspiracy to distribute heroin, Kadiri Apampa brought this civil suit against two assistant U.S. attorneys and a DEA agent who had been involved in his prosecution. Apampa's complaint, prepared without legal assistance, claims that the defendants made false statements about him in applications (which were granted) for permission to tap his phone conversations. The particular statement of which he complains, which he calls not only false but libelous, is that a "U.S. Customs source of information alleged that ... Apampa acted as a controller of white female heroin couriers." He also complains about a press conference "orchestrated" by the Department of Justice in which his arrest and that of his coconspirators was announced and he was described as an "international heroin supplier." The complaint seeks $50 million in damages. No statutory or common law basis for the suit is mentioned, but the government moved to dismiss the complaint on the ground that it was really a suit under the Federal Tort Claims Act and Apampa had failed to comply with the requirement of making an administrative claim as a precondition to suing. The district judge agreed and dismissed the suit with prejudice, ignoring Apampa's contention in his response to the motion to dismiss that he was not suing under the Tort Claims Act; that he was bringing a *Bivens* suit and complaining of a violation of the federal wiretapping statute (Title III).

The judge was clearly right insofar as the complaint charges defamation. The Westfall Act makes a suit against the United States under the Federal Tort Claims Act the exclusive remedy for most nonconstitutional torts by employees of the federal government. 28 U.S.C. § 2679(b)(1); *Sullivan v. United States*, 21 F.3d 198, 200 (7th Cir. 1994). The Tort Claims Act, in turn, bars suits for defamation. 28 U.S.C. § 2680(h). *McDonnell v. Cisneros*, 84 F.3d 256, 261 (7th Cir.1996). Apampa can get nowhere with *Bivens*, because he is not alleging a violation of the Constitution. *Del Raine v. Williford*, 32 F.3d 1024, 1043 (7th Cir.1994); see *Siegert v. Gilley*, 500 U.S. 226, 233–34, 111 S.Ct.

1789, 114 L.Ed.2d 277 (1991); *Hussong v. Warden*, 623 F.2d 1185, 1190–91 (7th Cir. 1980). But the Title III issues require more attention.

■■■ Title III creates a remedy—and like the *Bivens* remedy one not supplanted by the Tort Claims Act, which by its terms does not furnish the exclusive remedy "for a violation of a statute of the United States under which [a civil] action against an individual is otherwise authorized," 28 U.S.C. § 2679(b)(2)(B)—against persons who intercept or disclose telephone and other electronic communications in violation of Title III. 18 U.S.C. § 2520(a); *Gelbard v. United States*, 408 U.S. 41, 46, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972). The remedies include statutory damages, 18 U.S.C. § 2520(c)(2)(B), and so the plaintiff need not prove any actual harm. An interception violates the statute if the authorization to make it was obtained by material false statements, e.g., *United States v. Williams*, 737 F.2d 594, 601–02 (7th Cir. 1984); *United States v. Milton*, 153 F.3d 891, 895–97, 1998 WL 518484, at *3–4 (8th Cir. Aug.24, 1998); *United States v. Bianco*, 998 F.2d 1112, 1126 (2d Cir.1993); *United States v. Guerra–Marez*, 928 F.2d 665, 670–71 (5th Cir.1991), as Apampa's complaint can be read to allege. While we have not found a case in which such a violation was made a basis for seeking damages (as distinct from seeking the exclusion from criminal or other legal proceedings of the evidence obtained by the wiretap), we cannot think of any reason why the damages remedy would be unavailable.

■■■ And nothing in the statute prevents a defendant lawfully convicted on the basis of wiretapping evidence from seeking this remedy, although relief will sometimes be blocked by the principle of *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), which is fully applicable to Title III. *Uboh v. Reno*, 141 F.3d 1000, 1006 (11th Cir.1998). The principle of *Heck* is that a civil suit which necessarily challenges the validity of the plaintiff's conviction cannot be maintained until and unless the plaintiff gets his conviction set aside, even if he does not seek in the civil suit a remedy that would undo his conviction. But as in the parallel case of an illegal search, a Title III suit by a convicted defendant need not challenge the conviction and so does not fall afoul of *Heck*. The fact that some evidence used in

a trial is tainted by illegality does not necessarily undermine the conviction, given the presence of other evidence and the limitations of the exclusionary rule. E.g., *Heck v. Humphrey, supra*, 512 U.S. at 487 n. 7, 114 S.Ct. 2364; *Gonzalez v. Entress*, 133 F.3d 551, 553–54 (7th Cir.1998); *Simmons v. O'Brien*, 77 F.3d 1093, 1095 (8th Cir.1996). And therefore convicted defendants such as Apampa who have a Fourth Amendment or Title III claim are required to bring suit immediately rather than wait to get their conviction vacated. See, e.g., *Kelley v. Myler*, 149 F.3d 641, 645 (7th Cir.1998); *Gonzalez v. Entress*, 133 F.3d 551, 553 (7th Cir. 1998); *Washington v. Summerville*, 127 F.3d 552, 556–57 (7th Cir.1997). The principle of *Heck* would have no even conceivable application if Apampa were complaining about the interception of communications unrelated to his illegal activities, or if the communications, though relevant to those activities, had not been used in the criminal proceedings against him.

■■■ The problem is that Apampa's complaint, insofar as it can be thought to be charging a violation of Title III at all, is directed at the defendants' calling him an "international heroin supplier" at a press conference. He does not claim that this statement was part of any electronic communication to which he was a party, and he can't complain about references to him in wiretapped conversations to which he was not a party. 18 U.S.C. § 2520(a). Clearly the statement about the white female heroin couriers, made in the defendants' *application* for permission to tap Apampa's phone conversations, was not a fruit of the wiretapping.

It might be possible to infer that the same defendants who he claims lied in the application were behind the disclosures at the press conference. Even so, the implication would be that the defendants were out to get him, not that they used what they overheard in the wiretapped conversations to defame him at the press conference. The latter is, however, a possible reading, and perhaps, if so read, the complaint stated a claim. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam); *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir.1998).

That we need not decide, as we believe that Title III does not forbid the government to make public disclosure of criminal charges even if the charges include information obtained from wiretapping, *Smith v. SEC*, 129 F.3d 356, 363 (6th Cir.1997), unless the criminal proceedings are themselves nonpublic, *United States v. Dorfman*, 690 F.2d 1230 (7th Cir.1982); *Certain Interested Individuals v. Pulitzer Publishing Co.*, 895 F.2d 460 (8th Cir. 1990); *In re New York Times Co.*, 828 F.2d 110 (2d Cir.1987), and here, as is normally the case, they were public. See, e.g., *United States v. Roth*, 777 F.2d 1200, 1205 (7th Cir.1985); *Aversa v. United States*, 99 F.3d 1200, 1210–11 (1st Cir. 1996). Suppose the government lawfully intercepted a telephone conversation in which a person admitted that he was selling cocaine, and on the basis of this admission he was indicted for the sale of cocaine. Suppose, indeed, that this was the *only* evidence on which the indictment was based. We cannot find anything in Title III that would bar the government from summarizing the evidence in the indictment—indeed without such a summary the indictment might not adequately inform the defendant of the charge, *United States v. Hinkle*, 637 F.2d 1154, 1158 (7th Cir. 1981)—and from publicizing the indictment in the same way that it would publicize an indictment not based on evidence obtained by means of wiretapping.

The specific charge against Apampa was that he supplied heroin from Nigeria to the United States, and if true that made him an international heroin supplier. The charge was contained in a public indictment, and the government was entitled to announce the indictment publicly. *Aversa v. United States, supra*, 99 F.3d at 1210–11. Once privileged information is properly disclosed in a public proceeding, the publicizing of the proceeding is not a violation of the privilege. This principle has been established in cases involving press releases announcing indictments based in part on confidential information in tax returns and grand jury proceedings, *Johnson v. Sawyer*, 120 F.3d 1307, 1325 (5th Cir.1997); *Lampert v. United States*, 854 F.2d 335, 337 n. 1, 338 (9th Cir.1988); *Stepanian v. Addis*, 699 F.2d 1046, 1049

(11th Cir.1983), and its application to Title III is assumed in *United States v. Jennings*, 842 F.2d 159, 161 (6th Cir.1988), endorsed in *In re Globe Newspaper Co.*, 729 F.2d 47, 58 (1st Cir.1984) (dictum), and implicit in Title III's authorization of law enforcement personnel who have lawfully obtained knowledge of intercepted communications to "use [the] contents [of the communications] to the extent such use is appropriate to the proper performance of [their] official duties." 18 U.S.C. §§ 2510(7), 2517(2).

A<small>FFIRMED</small>.