RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0315p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

CHERYL BEAUDRY, individually and on
behalf of all others similarly situated,
                              *Plaintiff-Appellant,*

                    *v.*

TELECHECK SERVICES, INC., TELECHECK
INTERNATIONAL, INC. and FIRST DATA
CORPORATION,

                              *Defendants-Appellees.*

No. 08-6428

————————————

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 07-00842—Aleta Arthur Trauger, District Judge.

Argued: August 6, 2009

Decided and Filed: August 28, 2009

Before: KEITH, SUTTON and WHITE, Circuit Judges.

————————————

## COUNSEL

————————————

**ARGUED:** Martin D. Holmes, DICKINSON WRIGHT PLLC, Nashville, Tennessee, for
Appellant. David R. Esquivel, BASS BERRY & SIMS, PLC, Nashville, Tennessee, for
Appellee. **ON BRIEF:** Martin D. Holmes, DICKINSON WRIGHT PLLC, Nashville,
Tennessee, for Appellant. David R. Esquivel, Wallace W. Dietz, Stephen J. Jasper, BASS
BERRY & SIMS, PLC, Nashville, Tennessee, for Appellee.

————————————

## OPINION

————————————

SUTTON, Circuit Judge. Cheryl Beaudry appeals the district court's dismissal of
her lawsuit under the Fair Credit Reporting Act (FCRA or the Act). Because FCRA's
private right of action does not require proof of actual damages as a prerequisite to the
recovery of statutory damages for a willful violation of the Act, we reverse.

I.

In 2007, Cheryl Beaudry sued the defendants, a group of foreign corporations who provide check-verification services. According to Beaudry, the defendants failed to account for a 2002 change in the numbering used by the Tennessee driver's license system, leading their systems to reflect incorrectly that many Tennessee consumers, including Beaudry, were first-time check-writers. Claiming that this error affected her and "hundreds of thousands, if not millions," of other Tennesseans, Class Action Compl., R. 1, ¶ 65 (Aug. 17, 2007), she sought to represent a class of affected consumers, contending that the defendants' willful failure to provide accurate information entitled the class members to "declaratory relief, injunctive relief, statutory damages, punitive damages, attorneys' fees, costs and expenses." *Id.* ¶ 99.

The defendants filed a motion to dismiss on two grounds: that her complaint failed to allege that she had been injured by a FCRA violation and that the statute of limitations had run. Beaudry argued that neither ground for dismissal applied, and that in the alternative the statute permitted her to obtain forward-looking injunctive relief. The district court granted the motion on the ground that she had not alleged any injury and that the statute does not authorize courts to grant injunctive relief.

II.

We give fresh review to the district court's dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Bowman v. United States*, 564 F.3d 765, 769 (6th Cir. 2008). In deciding whether a complaint has stated a claim on which relief can be granted, we "construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims." *Id.*

The Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, places a number of restrictions on "consumer reporting agencies," meaning any individual or "other entity" who "regularly . . . assembl[es] or evaluat[es] consumer credit information . . . for the purpose of furnishing consumer reports to third parties." *Id.* § 1681a(b), (f). One of the Act's (many) requirements is that consumer reporting agencies must "follow reasonable procedures to

assure maximum possible accuracy of the information concerning the individual about whom" a credit report relates. *Id.* § 1681e(b).

To ensure compliance with its mandates, the FCRA contains several enforcement mechanisms: (1) The Federal Trade Commission may bring an administrative action against violators of the Act, *see id.* § 1681s(a); (2) federal executive agencies that regulate certain types of consumer reporting agencies—such as the FDIC, which has jurisdiction over depository banks—may enforce the Act, *see id.* § 1681s(b); (3) state Attorneys General may bring enforcement actions to recover damages and to enjoin future violations, *see id.* § 1681s(c); and (4) private individuals may obtain relief against "willful[]" or "negligent" violators of the Act, *see id.* §§ 1681n, 1681o. The last enforcement mechanism—the private right of action—concerns us here.

The statute describes the willfulness private right of action in this way:

Any person who willfully fails to comply with any requirement imposed under [the FCRA] with respect to any consumer is liable to that consumer in an amount equal to the sum of—

(1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

(B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

(2) such amount of punitive damages as the court may allow; and

(3) in the case of a successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

*Id.* § 1681n(a). The negligence action is worded similarly: It provides that "[a]ny person who is negligent in failing to comply with any requirement imposed under [the FCRA] with respect to any consumer is liable to that consumer." *Id.* § 1681o. Unlike a willfulness claimant, however, the statute permits a negligence claimant to recover only actual damages, costs and attorney's fees. *Id.*

The district court, Beaudry claims, erred in dismissing her lawsuit on the ground that the complaint failed to allege that the FCRA violation injured her.  We agree.

Beaudry, to start, alleged that the defendants violated § 1681e(b) "with respect to" her, just as the statute requires.  *Id.* § 1681n(a).  "Whenever a consumer reporting agency prepares a consumer report," the provision says, "it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  *Id.* § 1681e(b).  According to Beaudry's complaint, she has "presented checks to businesses utilizing Defendants' [check] verification services," Compl. ¶ 13, and "each time a transaction is processed by Defendants, a new consumer report is generated," *id.* ¶ 58.  Since Tennessee changed the numbering system for its driver's licenses in 2002, those reports systematically have been based on inaccurate information because the new license numbers make consumers, including Beaudry, "appear as a first-time check writer" within the defendants' systems.  *Id.* ¶ 60.  All that the defendants need to do to correct the problem, she claims, is to "associate the old driver['s] license number with the new driver['s] license number."  *Id.*  Beaudry thus claims to have suffered the precise "injury" that the statute proscribes:  The defendants "prepare[d] a consumer report" about her but failed to "follow reasonable procedures to assure maximum possible accuracy of the information" it contained.  15 U.S.C. § 1681e(b).

The defendants, however, insist that the statute requires something more—that Beaudry allege a different form of "injury": consequential damages.  "Plaintiff," they note, "has not . . . had a check rejected or any other transaction terminated as a result of a TeleCheck recommendation"; nor has she "suffered any harm with respect to the availability of credit."  Br. at 5.  But the Act imposes no such hurdle on *willfulness* claimants.  The Act does not require a consumer to wait for unreasonable credit reporting procedures to result in the denial of credit or other consequential harm before enforcing her statutory rights.  It requires regulated companies to use "reasonable procedures" when "prepar[ing] a consumer report" "with respect to" a given consumer, and creates a cause of action in favor of the consumer when they do not.  15 U.S.C. §§ 1681e(b), 1681n(a).

Section 1681n, which creates the cause of action for willful violations, also does not impose  the consequential-damages requirement that defendants wish to add to the statute.

"Any consumer," it says, may sue to recover "any actual damages . . . *or* damages of not less than $100 and not more than $1000" from "[a]ny person who willfully fails to comply with any requirement imposed under [the FCRA] with respect to [that] consumer." 15 U.S.C. § 1681n(a)(1)(A) (emphasis added). Because "actual damages" represent an *alternative* form of relief and because the statute permits a recovery when there are no identifiable or measurable actual damages, this subsection implies that a claimant need not suffer (or allege) consequential damages to file a claim. A comparison with § 1681o buttresses the point: Congress excluded the statutory-damages option in negligence cases. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (internal quotation marks omitted).

Case law in this and related areas backs up this interpretation. In *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006), the Seventh Circuit addressed the Act's prohibition on accessing a consumer's credit score without her consent and the narrow exception created for lenders who are making a "firm offer of credit" to the consumer. *See* 15 U.S.C. § 1681b(c)(1)(B)(i). The court explained that individual-damages issues did not preclude class certification because the class representative could seek statutory damages "without proof of injury" in lieu of actual damages. *Murray*, 434 F.3d at 952–53. Other courts have reached the same conclusion when considering § 1681n statutory damages suits premised on violations of other provisions of the Act. *See Ashby v. Farmers Ins. Co. of Or.*, No. CV 01-1446-BR, 2004 WL 2359968, at *5 (D. Or. Oct. 18., 2004) (holding that no "actual harm" need be proved in an action under § 1681m(a) because "Congress . . . has stated in plain terms that statutory damages are available as an alternative remedy to actual damages"); *accord Gillespie v. Equifax Info. Servs.*, No. 05 C 138, 2008 WL 4614327, at *7 (N.D. Ill. Oct. 5, 2008) (relying on the same reasoning in determining that class treatment was appropriate for a violation of § 1681g(a)(1)'s disclosure requirements); *Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 302–03 (N.D. Ill. 2005) (reaching a similar conclusion with respect to a FCRA claim premised on a violation of § 1681b(e)).

Courts have reached a like conclusion in considering other statutes that contain similar statutory damages provisions. "[A]ny actual damage[s] sustained by [a consumer]

as a result of [a] failure" to comply with the Fair Debt Collection Protection Act are available as an *alternative* to the recovery of statutory damages, suggesting that such damages are not a necessary precondition to suit. *See Fed. Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir. 2007) (noting that the availability of statutory damages under the Fair Debt Collection Protection Act, *see* 15 U.S.C. § 1692k(a), means that "a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages"). In considering a claim that the anti-wiretapping provisions of 18 U.S.C. § 2520 had been violated, the Seventh Circuit reasoned that, because the statute permits the recovery of "actual damages . . . or statutory damages of not less than $50 and not more than $500," 18 U.S.C. § 2520(c)(1)(A), "the plaintiff need not prove any actual harm," *Apampa v. Layng*, 157 F.3d 1103, 1105 (7th Cir. 1998). We have reached the same conclusion when construing the Truth in Lending Act, 15 U.S.C. § 1640(a), which allows recovery of "any actual damage sustained . . . as a result of the failure" or "twice the amount of any finance charge," *see Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797, 800 (6th Cir. 1996) (holding that a consumer did not need to show that she "suffered actual monetary damages" or that she "was actually misled or deceived" in order to prevail on a TILA claim for statutory damages and attorney's fees); *accord Edwards v. Your Credit, Inc.*, 148 F.3d 427, 441 (5th Cir. 1998); *see also Martinez v. Shinn*, 992 F.2d 997 (9th Cir. 1993) (reaching the same conclusion with respect to the Migrant and Seasonal Agricultural Worker Protection Act, which allows the recovery of "actual damages, or statutory damages," 29 U.S.C. § 1854(c)(1)).

No Article III (or prudential) standing problem arises, it bears adding, if Beaudry is permitted to file this claim. Congress "has the power to create new legal rights, [including] right[s] of action whose only injury-in-fact involves the violation of that statutory right," *In re Carter*, 553 F.3d 979, 988 (6th Cir. 2009), and the two constitutional limitations on that power do not apply here. First, Beaudry must be "among the injured," in the sense that she alleges the defendants violated *her* statutory rights. *Id.*; *see Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972). Yet that limit poses no obstacle here: Beaudry alleged that she was one of the consumers about whom the defendants were generating credit reports based on inaccurate information due to their failure to update their databases to accommodate the new Tennessee driver's license numbering system. She thus has alleged that the defendants'

failure to follow "reasonable procedures to assure maximum possible accuracy" of credit reporting information occurred "with respect to" her, as the statute requires. 15 U.S.C. §§ 1681e(b), 1681n(a). Second, although a right created by Congress "need not be economic in nature, it still must cause individual, rather than collective, harm." *Carter*, 553 F.3d at 989. The Act's statutory damages claim clears this hurdle as well: It does not "authorize suits by members of the public at large," *id.*; it creates an individual right not to have unlawful practices occur "with respect to" one's own credit information, 15 U.S.C. § 1681n. This nexus between the individual plaintiff and the legal violation thus suffices to sustain this statutorily created right. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982) (sustaining the right of Fair Housing Act market testers to receive "truthful information concerning the availability of housing" from sellers, even in the absence of any further harm).

Urging a contrary conclusion, defendants invoke a long list of cases purporting to support their position. They start with a Sixth Circuit case, claiming that the "established" law of this circuit requires the dismissal of this claim. Resp. Br. at 9. But the opinion they cite does not contain a holding on the matter at hand, and it is unpublished to boot. *See Nelski v. Trans Union, LLC*, 86 F. App'x 840 (6th Cir. 2004). To be fair to the defendants and to the district court judge who relied on *Nelski*, the opinion does list "injur[y]" as one of four things a plaintiff must prove in a § 1681e(b) claim. *Id.* at 844. But this aspect of the case was pure dictum because the parties *conceded* that an injury had occurred and disputed only the reasonableness of the defendant's credit reporting procedures. *Id.*

In *Washington v. CSC Credit Servs.*, 199 F.3d 263 (5th Cir. 2000), the Fifth Circuit also appears to address today's issue, but it *never mentions* the 1996 amendment to FCRA, which added a statutory-damages remedy as an alternative to the actual damages already provided for willfulness claims. *Id.* at 266–67. With one exception, the decision also relies entirely on pre-1996 cases, *id.*, bolstering the inference that the court never came to terms with (or was not told by the parties about) the amendment. The one exception makes the same mistake. *See Andrews v. Trans Union Corp.*, 7 F. Supp. 2d 1056, 1084 n.33 (C.D. Cal. 1998), *aff'd in part and rev'd in part on other grounds*, 225 F.3d 1063 (9th Cir. 2000), *rev'd*, 534 U.S. 19 (2001). The *Washington* opinion contains nothing to suggest that the panel or

parties were aware the statute had been amended in 1996 to permit claims without proof of "actual damages."

Other cases are no more helpful. One case lists an "injury" requirement in connection with the private action for *negligent* FCRA violations under 15 U.S.C. § 1681o, *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996), but omits any reference to it when discussing the cause of action for *willful* violations under § 1681n, *see id.* at 970. Analogies to the negligence cause of action offer little assistance to the defendants because § 1681o, unlike § 1681n, allows a plaintiff to recover only actual damages, not statutory damages. Another case, decided in 1983, (1) dealt with an earlier version of the FCRA, which again did not allow for private actions to recover statutory damages until 1996, *see* Pub. L. 104-208, Div. A, Title II, § 2412(b); *see also former* 15 U.S.C. § 1681n(1) (West 1996), and (2) dealt with a negligence claim, not a willfulness one. *See Morris v. Credit Bureau of Cincinnati, Inc.*, 563 F. Supp. 962, 963, 967 (S.D. Ohio 1983).

The refrain continues. A number of cases cite *Nelski*, *Philbin* or *Morris* for the proposition that injury is required in a willfulness action without explaining what they mean by injury and without adding any reasoning to support that conclusion. *See, e.g.*, *Currier v. Transunion Credit Info. Co.*, No. 06-12365, 2008 WL 795738, at *4 (E.D. Mich. Mar. 25, 2008); *Holmes v. TeleCheck Int'l*, 556 F. Supp. 2d 819, 831 (M.D. Tenn. 2008); *Breed v. Nationwide Ins. Co.*, No. 3:05CV-547-H, 2007 WL 1408212, at *1 (W.D. Ky. May 8, 2007). Other cases contain like assertions but again do not address the implications of FCRA's language or rely exclusively on cases that predate the 1996 amendment. *See, e.g.*, *Jackson v. Equifax Info. Servs.*, 167 F. App'x 144, 146 (11th Cir. 2006); *George v. Equifax Mortg. Servs.*, No. 06-cv-971, 2008 WL 4425299, at *7 (E.D.N.Y. Sept. 30, 2008); *Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638, 647 (S.D. Ala. 2007). Still other cases—the least helpful of all—predate the critical 1996 amendment. *See, e.g.*, *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160–61 (11th Cir. 1991); *Pettrus v. TRW Consumer Credit Serv.*, 879 F. Supp. 695, 697 (W.D. Tex. 1994).

The district court and the defendants suggest that, if we read the law to allow statutory damages without proof of injury, we would be creating a strict liability regime. Not so. The existence of a *willfulness* requirement proves that there is nothing "strict" about the

state of behavior required to violate the law. And there is an injury requirement because the statute requires the claimant to show that the defendants used unreasonable procedures in preparing a credit report about her. To the extent the defendants worry about violations of the statute that hurt no one—say a willful violation of the "reasonable procedures" requirement that creates no inaccuracies in the data used to generate reports or, better yet, creates inaccuracies that *favor* the consumer—that interesting problem is not presented here. Beaudry alleges that the defendants' systems include *false* and *negative* information about her.

Under these circumstances, Beaudry's claim should not have been dismissed. She has the statutory right to move beyond the Rule 12(b)(6) stage of this case.

III.

That leaves this question: Should we address the district court's rejection of Beaudry's alternative reason for not dismissing the case—her argument that, even if she does not have a damages action, FCRA empowers her to bring an injunction action? We think not.

In filing their motion to dismiss, the defendants did not seek to dismiss the claim on this ground. The issue arose solely in Beaudry's response to the motion to dismiss, apparently as a way to preserve a cause of action of some type should the court reject her damages claim on lack-of-injury or statute-of-limitations grounds. Two years also have passed since Beaudry filed her complaint, raising questions in our minds about whether a claim for injunctive relief would now be moot given the possibility, perhaps likelihood, that the defendants have changed their procedures in the interim.

Adding to our reluctance to resolve the issue at this juncture is the reality that the answer to the question is far from self-evident. In *Washington*, the one court of appeals case to address the issue, the Fifth Circuit held that FCRA's grant to the FTC of the power to obtain injunctive relief, *see* 15 U.S.C. § 1681s(a)(1); *id.* § 45(a), creates a negative inference that FCRA's private right of action, which has no express provision for injunction actions, does not allow individuals to obtain injunctive relief. 199 F.3d at 268. *Washington* may be right, and the district court thus may have been right to rely on it. But the answer is not free

from doubt. *Califano v. Yamasaki*, 442 U.S. 682, 705 (1979), points out that a district court should start with the assumption that, in actions over which it has jurisdiction, it has authority to issue injunctive relief. In the absence of "the clearest command to the contrary from Congress," the plaintiff may seek injunctive relief. *Id.*; *see also Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 19 (1974) (holding that the enumeration of specific types of equitable authority in the Freedom of Information Act did not preclude district courts from granting non-enumerated injunctive relief); *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946) ("Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction."); *United States v. Universal Mgmt. Servs., Inc.*, 191 F.3d 750, 761 (6th Cir. 1999). Further complicating the picture are the conflicting negative inferences created by other parts of the statute. *Compare* 15 U.S.C. § 1681s(c)(1)(A) (explicitly allowing state Attorneys General to pursue injunctive relief—suggesting that such injunctive relief would not otherwise be available); *id.* § 1681u(m) (explicitly allowing injunctive relief under that section—suggesting it would not otherwise be available), *with id.* § 1681u(l) (limiting remedies in that section to those explicitly provided—suggesting that other remedies would otherwise be available implicitly).

Because this issue may no longer have any bearing on this case and because its premature resolution runs the risk of etching error into our case books, we save its resolution for another day. If, as it turns out, the issue remains relevant to the final resolution of this case, the district court is free to certify the issue under 28 U.S.C. § 1292(b) for an immediate interlocutory appeal to us.

IV.

For these reasons, we reverse the dismissal of Beaudry's complaint and remand for further proceedings.