NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0371n.06

No. 20-6018

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| CHERYL BEAUDRY,<br><br>     Plaintiff,<br><br>ESTATE OF CHERYL BEAUDRY, Individually and on behalf of all others similarly situated,<br><br>     Plaintiff-Appellant,<br><br>v.<br><br>TELECHECK SERVICES, INC.; TELECHECK INTERNATIONAL, INC.; FIRST DATA CORPORATION,<br><br>     Defendants-Appellees. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **FILED**<br>Jul 27, 2021<br>DEBORAH S. HUNT, Clerk<br><br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |

Before: BOGGS, CLAY, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Cheryl Beaudry sued TeleCheck on behalf of herself and other Tennessee consumers, alleging that its failure to link the consumers' old and new driver's-license numbers violated the Fair Credit Reporting Act. A district court granted summary judgment to TeleCheck because Beaudry lacked standing to sue. We affirm.

Businesses sometimes use a check-verification company, like TeleCheck, to determine whether to accept a customer's payment by check. If a business uses TeleCheck, it provides Telecheck the customer's "identifiers"—often a driver's-license number. TeleCheck then runs that identifier through its system, reviews the person's banking and check-writing history, and uses its "predictive scoring logic" to calculate the risk that the check will bounce. Ultimately,

TeleCheck issues a single-digit code that represents its recommendation to the business. As relevant here, a "1" recommends that the business accept the check; a "3" recommends that the business decline the check due to the customer's predicted risk; and a "4" recommends that the business decline the check due to a discrete negative event in the customer's banking history (*e.g.*, a bounced check).

In February 2002, Tennessee changed the length of its driver's-license numbers from eight to nine digits. When a person with an eight-digit number applied for a new license, Tennessee created a new nine-digit number by adding a "0" to the front of the original license number.

After some delay, TeleCheck updated its system to accept the new nine-digit numbers as "identifiers." But TeleCheck did not update its databases to link a customer's new nine-digit number to her original eight-digit number. As a result, when TeleCheck first used a customer's new nine-digit number, its predictive-scoring logic treated that person as if she were a first-time check writer, which meant that the check posed a greater risk. TeleCheck's failure to link the two numbers therefore increased the likelihood that TeleCheck would recommend a "Code 3" decline of that person's check.

Cheryl Beaudry, a Tennessee customer who paid various debts with checks, sued TeleCheck in 2007 on behalf of herself and a putative class of similarly situated individuals. In her complaint, she alleged that TeleCheck had willfully and negligently violated its duty under the Fair Credit Reporting Act to "follow reasonable procedures to assure maximum possible accuracy of the information" about Tennessee consumers in its reports. 15 U.S.C. § 1681e(b); *see id.* §§ 1681n, 1681o. A district court dismissed Beaudry's complaint for failure to allege that she had suffered actual damages. We reversed, holding that Beaudry did not need to allege actual damages to state a claim that TeleCheck had willfully violated the Act. *See Beaudry v. TeleCheck Servs.,*

*Inc.*, 579 F.3d 702, 705–06 (6th Cir. 2009).  Beaudry later amended her complaint and sought statutory damages, punitive damages, injunctive relief, and declaratory relief.

Beaudry thereafter died.  The court agreed to substitute her estate (which we also refer to as "Beaudry") as the named plaintiff, but in doing so dismissed her claims for punitive damages, injunctive relief, and declaratory relief.  While this suit remained pending in the district court, the Supreme Court held that a "bare procedural violation" of the Fair Credit Reporting Act could not give a plaintiff standing to sue.  *Spokeo v. Robins*, 136 S. Ct. 1540, 1549 (2016).

The district court later granted summary judgment on that ground.  We review that decision de novo.  *See McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016).

To establish Article III standing, Beaudry must show that she suffered an injury in fact, that the injury is fairly traceable to the defendant's allegedly unlawful conduct, and that the relief she seeks will likely redress that injury.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  The showing necessary to establish these elements depends on the stage of the case; on summary judgment, we ask whether the plaintiff has "set forth by affidavit or other evidence specific facts" that support each element.  *Id.* at 561 (internal quotation marks omitted).

Beaudry asserts that businesses declined several of her checks because TeleCheck failed to link her eight-digit driver's-license number with her nine-digit one.  But Beaudry lacks evidence that the rejection of any of her checks was fairly traceable to TeleCheck's failure to link those numbers.  *See Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 984 n.3 (6th Cir. 2012).  Beaudry could not recall in her deposition where or when any of her checks were rejected.  And none of the remaining evidence connects the rejection of her checks to TeleCheck's failure to link the license numbers.  TeleCheck's own records show that it never recommended a decline when using her nine-digit number; instead, on three occasions, it recommended the rejection of her

checks using her eight-digit number. Moreover, when TeleCheck made those recommendations, it used "Code 4"—the code based on a discrete negative event in Beaudry's banking history, rather than on a predicted future risk.

Beaudry contends that there is evidence that TeleCheck had recommended rejection of her checks, based on its failure to link her driver's-license numbers, but simply lost its records of having done so. Although TeleCheck did lose some of its records, Beaudry's argument is pure speculation, especially because she cannot identify when, where, or how many of these check declines occurred. And at summary judgment, a court cannot trace Beaudry's alleged injury to TeleCheck's actions through speculation alone. *See Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 715 (6th Cir. 2015).

Beaudry also argues that she has standing because TeleCheck's failure to link the driver's-license numbers placed her at "risk of real harm"—namely, that her checks would be rejected. *Spokeo*, 136 S. Ct. at 1549. But that theory of standing fails on redressability grounds. The only claim for relief that remains is Beaudry's request for statutory damages. Yet those damages cannot redress a "risk of future harm, standing alone." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210–11 (2021). Instead, they can redress only a harm that actually happened, either when the risk materialized or when it caused a concrete injury. *See id.* at 2211. And here, as explained above, Beaudry lacks any evidence that the risk she cites (*i.e.*, rejection of her check because of a failure to link her license numbers) ever materialized.

Finally, Beaudry argues that the failure to link her driver's-license numbers was an "informational injury" that supports standing. But the "mere existence of inaccurate information in a database" cannot confer standing. *Id.* at 2209.

The district court's judgment is affirmed.