Filed 6/4/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TERRY ASKINS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CRST EXPEDITED, INC., AN IOWA CORPORATION,<br><br>    Defendant and Respondent. | A172921<br><br>(San Mateo County<br>Super. Ct. No. 19CIV00644) |

Plaintiff Terry Askins filed a class action complaint against defendant CRST Expedited, Inc. (CRST) alleging in relevant part a violation of the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.; FCRA; all statutory references are to title 15 of the United States Code unless otherwise noted).

After the court granted class certification, the Fifth District Court of Appeal issued *Limon v. Circle K Stores Inc.* (2022) 84 Cal.App.5th 671, 703 (*Limon*), which held a plaintiff must allege a concrete injury for standing under the FCRA in California courts. CRST successfully moved to decertify the class on the basis Askins failed to identify a concrete harm.

On appeal, and contrary to *Limon*, we conclude the FCRA does not require a concrete injury for standing in California and reverse the decertification order.[1] We reach this conclusion as both the language of the

---

[1] On March 20, 2026, California Advocates for Nursing Home Reform, Centro Legal De La Raza, Community Legal Services in East Palo Alto, Contra Costa Senior Legal Services, East Bay Community Law Center,

1

FCRA and its legislative history demonstrate that Congress authorized recovery of statutory damages for failure to comply with the FCRA for a statutory violation, even absent proof of harm. And we find Askins has demonstrated a sufficient interest in his FCRA claim.

## BACKGROUND

Askins applied online for a position with CRST, a trucking company. During the application process, CRST provided Askins with a document that included, among other items, a disclosure that CRST would conduct a background check. During Askins's employment with CRST, CRST provided him several forms that related in part but not exclusively to background checks. CRST conducted background checks on Askins before and during his employment.

Askins filed a class action complaint on behalf of all "Defendants' current, former and prospective applicants for employment in the United States who applied for a job with Defendants at any time during the period for which a background check was performed beginning five years prior to the filing of this action and ending on the date that final judgment is entered in this action."

The complaint asserted that CRST conducted background checks absent legally compliant disclosure and authorization forms. Based on that assertion, the complaint alleged violations of the FCRA, along with other

Housing and Economic Rights Advocates, The Katharine & George Alexander Community Law Center, Legal Assistance for Seniors, Public Counsel, and Public Justice filed an application for leave to file an amici curiae brief on behalf of Askins on the issue of standing. We granted that request. Both the amici curiae brief and CRST's opposition, filed on May 26, 2026, expanded on the standing arguments raised by the parties in their briefs. We have considered and addressed these arguments in the discussion section below.

claims not at issue in this appeal. The complaint identified classes corresponding to the FCRA, among others.

Askins subsequently moved for class certification. The motion sought to certify two classes: a "consumer report class" encompassing individuals on whom CRST obtained a consumer report for employment purposes, and a "driver class" encompassing those individuals in the consumer report class who applied for a "driver position." The motion also sought to certify two subclasses involving (1) those individuals for whom CRST has no record of obtaining authorization prior to obtaining a consumer report, and (2) those individuals for whom CRST has no record of providing a "Summary of Rights" prior to obtaining a consumer report. CRST opposed the motion.

After various continuances, the court vacated the hearing on the original motion and Askins re-filed his motion for class certification, which was granted. Askins did not include his re-filed motion or the court's order granting class certification as part of the record on appeal. Approximately a year and a half later, in August 2023, Askins filed an amended class action complaint that did not alter the causes of action or classes corresponding to the different alleged statutory violations.

CRST then filed a motion for class decertification based on the recently decided case of *Limon, supra,* 84 Cal.App.5th 671. In *Limon,* the Fifth District Court of Appeal concluded a plaintiff must demonstrate a cognizable injury because of the noncompliant disclosure to have standing under the FCRA.

The motion was contested and, following a hearing, the trial court granted the motion for decertification. The court concluded *Limon* was binding authority, and Askins failed to allege a concrete injury arising from the FCRA violation. Specifically, Askins's confusion regarding the

3

background check forms and lack of knowledge that CRST would obtain any consumer reports was "nothing more than 'informational,' " insufficient to confer standing under *Limon*. The court consequently decertified the entire class "[b]ecause certification was originally sought and granted based upon the alleged FCRA violations and both classes certified by this court rely on the FCRA causes of action."

## DISCUSSION

### I. Standard of Review

A trial court's order decertifying a class is reviewed for abuse of discretion. (*Estrada v. Royalty Carpet Mills, Inc.* (2022) 76 Cal.App.5th 685, 721.) Such an order " ' "generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions." ' " (*Ibid.*) The latter two grounds are especially significant here. As the court explained in *Estrada*, if a court's decision is based on an incorrect understanding of the applicable law or incorrect legal assumptions, it is subject to reversal. (*Ibid.*)

Here, the dispositive issue is one of statutory interpretation: whether consumer damages for willful violations of the FCRA are available only when there is proof of actual injury, such that California plaintiffs would need to demonstrate such harm to have standing. That question presents a pure issue of law subject to de novo review. (*Kashanian v. National Enterprise Systems, Inc.* (2025) 114 Cal.App.5th 1037, 1043 (*Kashanian*).)

### II. Standing in California

Article III of the federal Constitution (Article III) imposes a " 'case-or-controversy limitation on federal court jurisdiction.' " (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1117, fn. 13.) Thus, to establish Article III standing, a plaintiff must show actual harm both caused by the defendant and

4

addressable by judicial relief.  (*Parsonage v. Wal-Mart Associates, Inc.* (2026) 118 Cal.App.5th 399, 411 (*Parsonage*), quoting *TransUnion LLC v. Ramirez* (2021) 594 U.S. 413, 423.)

California courts, by contrast, are not constrained by Article III's case-or-controversy requirement.  (Cal. Const., art. VI, § 10 [empowering superior court to adjudicate any "cause" brought before it]; *National Paint & Coatings Assn. v. State of California* (1997) 58 Cal.App.4th 753, 761.)  Instead, California courts "are guided by 'prudential' considerations" and generally require a plaintiff to have a personal interest "[t]o ensure that relevant facts and issues are adequately presented."  (*Bilafer v. Bilafer* (2008) 161 Cal.App.4th 363, 370; *Guracar v. Student Loan Solutions, LLC* (2025) 111 Cal.App.5th 330, 343.)

For causes of action based on statute, "standing is a matter of statutory interpretation."  (*Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1120.)  Thus, standing is determined by the language of the statute itself along with the underlying legislative intent and statutory purpose.  (*Boorstein v. CBS Interactive, Inc.* (2013) 222 Cal.App.4th 456, 466; *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 83 (*Kim*); *Midpeninsula Citizens for Fair Housing v. Westwood Investors* (1990) 221 Cal.App.3d 1377, 1385 [standing requirements vary based on legislative intent and the purpose of the statute].)

And the Legislature may authorize the recovery of statutory damages or penalties without the concrete harm required in federal court; indeed, the Legislature regularly gives relief to individuals who have not suffered concrete harm.  (*Guracar v. Student Loan Solutions, LLC*, *supra*, 111 Cal.App.5th at p. 343; see also, e.g., *Kim*, *supra*, 9 Cal.5th at pp. 83–91; *Naranjo v. Spectrum Security Services, Inc.* (2024) 15 Cal.5th 1056, 1070.)

5

California's approach to standing does not vary depending on whether it is considering a state or federal statute. The United States Supreme Court has "recognized often that the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability *even when they address issues of federal law, as when they are called upon to interpret the Constitution or . . . a federal statute.*" (*ASARCO Inc. v. Kadish* (1989) 490 U.S. 605, 617, italics added; see also *Saurman v. Peter's Landing Property Owner, LLC* (2024) 103 Cal.App.5th 1148, 1162 ["The subject of 'whether or not a party has standing to bring [a federal] claim in state court is a question of state law rather than federal law.' " (italics omitted)].) Therefore, we must determine whether California plaintiffs have standing under state law to bring FCRA claims absent concrete harm.

## III. Standing in California To Bring FCRA Violations

### A. History of the FCRA

Congress enacted the FCRA to ensure that consumer reporting agencies employ reasonable procedures that meet "the needs of commerce . . . in a manner which is fair and equitable to the consumer," particularly with respect to "the confidentiality, accuracy, relevancy, and proper utilization" of consumer information. (§ 1681(b).)

In 1996, Congress amended the FCRA in response to concerns that employers were obtaining and using consumer reports in ways that infringed upon job applicants' privacy rights. (*Limon, supra*, 84 Cal.App.5th at p. 689; see also Sen.Rep. No. 104-185, 1st Sess., p. 35 (1995).) Congress enacted the provision now codified at section 1681b(b)(2)(A), which prohibits the procurement of consumer reports "for employment purposes" unless certain specified disclosure and authorization requirements are satisfied. (*Syed v. M-*

6

*I, LLC* (9th Cir. 2017) 853 F.3d 492, 496–497.)  Section 1681b(b)(2)(A) provides, in relevant part: "[A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless— [¶] (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and [¶] (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person."

Congress simultaneously expanded the remedies available to consumers for willful violations of the FCRA, including a private right of action for consumers against "[a]ny person who willfully" violates the FCRA. (§ 1681n(a).)  Prior to the 1996 amendments, consumers could only recover actual damages resulting from willful violations.  (*Harris v. Mexican Specialty Foods, Inc.* (11th Cir. 2009) 564 F.3d 1301, 1306 (*Harris*), citing former § 1681n(a)(1)–(2); see Federal Deposit Insurance Act, Amendments, Pub.L. No. 91-508, § 601 (Oct. 26, 1970), 84 Stat. 1114, 1134.)  The 1996 amendments added an alternative statutory damages remedy, which authorized consumers to recover " 'damages of not less than $100 and not more than $1,000.' "  (*Harris*, at p. 1306, quoting Omnibus Consolidated Appropriations Act, 1997, Pub.L. No. 104-208, § 2412(b) (Sept. 30, 1996), 110 Stat. 3009, 3009-446 (Omnibus Act).)

As amended, section 1681n currently permits recovery of "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000" (§ 1681n(a)(1)(A)), together with punitive damages, costs, and attorney's fees (§ 1681n(a)(1)(B)(2)–(3)).

Thus, as the Supreme Court has recognized, section 1681n(a)(1)(A) allows a consumer to recover "either [1] 'actual damages' or [2] statutory damages of $100 to $1,000." (*Spokeo, Inc. v. Robins* (2016) 578 U.S. 330, 335.)

## B. The FCRA Does Not Require Actual Injury for Standing

The parties dispute whether the FCRA requires proof of actual injury, such that California plaintiffs must demonstrate such harm to establish standing in state court. The trial court, relying on *Limon*, *supra*, 84 Cal.App.5th 671, agreed with CRST and concluded damages under the FCRA are dependent on proof of injury. We disagree.

" ' " 'Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] 'We first examine the statutory language, giving it a plain and commonsense meaning.' [Citation.] 'If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' " ' " (*Kazelka v. Department of Motor Vehicles* (2025) 109 Cal.App.5th 1239, 1249.)

### 1. The Plain Language of Section 1681n

The plain language of the FCRA authorizes recovery of *either* "actual damages sustained by the consumer as a result of the failure" *or* statutory damages, together with punitive damages and litigation costs and fees. (§ 1681n(a)(1)(A).) In interpreting the phrase "damages" in section 1681n(a)(1)(A), we begin with its ordinary meaning " 'at the time Congress enacted the statute.' " (*Trim v. Reward Zone USA LLC* (9th Cir. 2023) 76 F.4th 1157, 1161 ["[A]bsent contextual evidence that Congress intended to

8

depart from the ordinary meaning of an undefined term . . . , the ordinary meaning of language 'expresses the legislative purpose.' "].)

At the time Congress amended the FCRA in 1996, Black's Law Dictionary defined "damages" broadly as "[a] pecuniary compensation or indemnity," recoverable by a person who has suffered "loss, detriment, or injury" to "his person, property, or rights, through the unlawful act or omission or negligence of another." (Black's Law Dict. (6th ed. 1990) p. 389.) The definition further explained that "[n]ominal damages are awarded for the vindication of a right where no real loss or injury can be proved." (*Id.* at p. 390.) The accompanying definition of "nominal damages" likewise recognized recovery where "the law recognizes a technical invasion of . . . rights" despite the absence of "substantial loss or injury." (*Id.* at p. 392.) Accordingly, the ordinary legal meaning of "damages" in 1996 was not limited to compensation for proven economic or consequential harm; it also clearly encompassed recovery for the violation of legal rights where no measurable injury could be shown.

Analyzing the term "damages" within the entirety of section 1681n confirms that Congress utilized the term in accordance with its ordinary legal meaning. (*Collondrez v. City of Rio Vista* (2021) 61 Cal.App.5th 1039, 1052 ["We do not examine [statutory] language in isolation, but in the context of the statutory framework as a whole."].) The first clause of section 1681n(a)(1)(A) authorizes recovery of "actual damages sustained by the consumer as a result of the failure." "Actual damages," in turn, were commonly understood to mean compensation for "actual and real loss or injury, as opposed . . . to 'nominal' damages." (Black's Law Dict. (6th ed. 1990) p. 390.)

The second clause, however, omits those limiting terms. Rather than authorizing "actual damages," Congress broadly authorized recovery of "damages of not less than $100 and not more than $1,000." (§ 1681n(a)(1)(A).) Congress likewise omitted the phrases "sustained by the consumer" and "as a result of the failure." (*Ibid*.) Those textual differences are significant, and we must assume them to be purposeful. (*Limon*, *supra*, 84 Cal.App.5th at p. 701 [where the Legislature uses different words or phrases in different parts of a statute, it must be presumed it intended a different meaning].) Applying that principle here, Congress's decision to use the phrase "damages" and deliberately omit the limiting language attached to "actual damages" indicates a broader intent, i.e., to allow recovery of damages "where there is no substantial loss or injury to be compensated, but still the law recognizes a technical invasion of [a plaintiff's] rights." (Black's Law Dict. (6th ed. 1990) p. 392 ["nominal damages" definition].)

The structure of the statute reinforces that conclusion. Congress separated the two remedies with the disjunctive "or," which ordinarily indicates that "the words it connects are to 'be given separate meanings.' " (*United States v. Woods* (2013) 571 U.S. 31, 45.) Under the first clause, a consumer may recover actual damages caused by the violation. Under the second, the consumer may recover statutory damages ranging from $100 to $1,000 for a willful violation even where actual damages cannot be proved. Construing the second option to require the same proof of injury as the first would collapse the distinction Congress created.

Two additional features of the overall statutory scheme confirm our interpretation.

First, when Congress added the statutory damages language in 1996, the amendment was titled "Minimum Civil Liability for Willful

10

Noncompliance." (Omnibus Act, *supra*, § 2412(b); see *Harris*, *supra*, 564 F.3d at p. 1306.) That title reflected Congress's intent to establish a minimum level of liability for willful violations, including violations that did not result in provable actual damages.

Second, Congress drew a sharp distinction between willful and negligent violations. Section 1681n, governing willful violations, authorizes statutory damages. By contrast, section 1681*o*, governing negligent violations, permits recovery only of "actual damages sustained by the consumer as a result of the failure." (§ 1681*o*(a)(1).) The negligent-violation provision thus "exclude[s] the statutory-damages option" found in section 1681n(a)(1)(A). (*Beaudry v. TeleCheck Services, Inc.* (6th Cir. 2009) 579 F.3d 702, 706 (*Beaudry*).) As several courts have observed, Congress's decision to include statutory damages for willful violations while limiting negligent violations to actual damages demonstrates that proof of actual injury is not required under section 1681n. (See *Beaudry*, at pp. 705–706; *Santos v. Healthcare Revenue Recovery Group, LLC.* (11th Cir. 2024) 90 F.4th 1144, 1155 (*Santos*).)

In sum, we conclude the statutory text, read in context and according to its ordinary meaning at the time of enactment, demonstrates that Congress authorized recovery of statutory damages for failure to comply with the FCRA even absent proof of harm. And in so holding, we note that federal appellate courts across multiple circuits have concluded that the FCRA allows for a recovery without proof of actual damages. (See, e.g., *Beaudry*, *supra*, 579 F.3d at pp. 705–707 [concluding the FCRA "permits a recovery when there are no identifiable or measurable actual damages"]; *Murray v. GMAC Mortgage Corp.* (7th Cir. 2006) 434 F.3d 948, 953 [FCRA "provide[s] for modest damages without proof of injury."]; *Robins v. Spokeo, Inc.* (9th Cir.

11

2017) 867 F.3d 1108, 1110–1111 ["The statute gives consumers . . . the right to sue (and to recover statutory damages) for willful violations even if the consumer cannot show that the violation caused him to sustain any actual damages."]; *Birmingham v. Experian Info. Sols., Inc.* (10th Cir. 2011) 633 F.3d 1006, 1009 ["Under § 1681n(a), however, the consumer need not prove actual damages if the violation is willful, but may recover . . . statutory damages ranging from $100 to $1,000."]; *Santos*, *supra*, 90 F.4th at p. 1155 ["Every circuit to [interpret § 1681n(a)(1)(A)] agrees that 'the plain language of the provision permits recovery of statutory damages in the absence of actual damages.' "].)

### 2. As the Statute Does Not Require Actual Injury, a Statutory Violation Alone is Sufficient To Confer Standing

Recent California appellate decisions addressing analogous statutory schemes demonstrate that a statutory violation is sufficient to confer standing in California. For example, in *Kashanian*, *supra*, 114 Cal.App.5th 1037, this division considered whether individuals had standing under the Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq.) based on allegedly noncompliant debt-collection notices. (*Kashanian*, at p. 1043.) After concluding the statute authorized statutory damages without proof of actual damages, the court held that the statutory violation alone was sufficient to confer standing. (*Id.* at p. 1045.) The court emphasized that the statute itself imposed no injury requirement and declined to "graft the federal standing requirements articulated in [Article III]" onto a California statutory action. (*Id.* at p. 1047.) Because California standing requirements are " 'less stringent' " than their federal counterparts, and because the

12

statute itself did not require a proof of concrete injury, no additional showing was necessary to establish standing.[2]  (*Id.* at p. 1048.)

The Sixth District Court of Appeal reached the same conclusion in *Chai v. Velocity Investments, LLC* (2025) 108 Cal.App.5th 1030, which involved the Fair Debt Buying Practices Act (Civ. Code, § 1788.50 et seq.).  The court explained the statute "authorizes consumers who receive noncompliant collection letters to sue for the violation of their statutory rights," and that "nothing in the statute suggests that any injury beyond the noncompliance is required."  (*Chai,* at p. 1040.)  Because the statute itself did not require proof of injury, the court concluded the statutory violation itself supplied the requisite beneficial interest and standing.  (*Id.* at p. 1041.)

Most recently, in *Parsonage, supra,* 118 Cal.App.5th 399, 406, the Fourth District Court of Appeal held that plaintiffs asserting claims under the Investigative Consumer Reporting Agencies Act (Civ. Code, § 1786, et seq.; ICRAA) need not demonstrate concrete injury beyond the violation of their statutory rights to establish standing.  Examining the statute's language and legislative history, the court concluded ICRAA "does not add any additional standing requirement, such as a showing of actual damages or injury."  (*Parsonage,* at p. 417.)  Accordingly, "plaintiffs need not show an injury beyond a violation of their rights to have standing under ICRAA."  (*Id.* at p. 419; see also *Yeh v. Barrington Pacific, LLC* (2026) 117 Cal.App.5th 1303, 1323 ["we conclude plaintiffs need not prove actual harm to bring an

---

[2] CRST contends this court in *Kashanian* "found the rationale in *Limon* to be consistent with general standing requirement[s]."  But *Kashanian* involved a different statute and did not consider the validity of *Limon*'s analysis regarding whether the FCRA required proof of actual injury.  It is that portion of *Limon*'s analysis that we critique today.

ICRAA claim; a violation of their informational rights alone entitles them to the statutory penalty and provides standing to pursue an action."].)

The same reasoning applies here. Like the statutes at issue in *Kashanian*, *Chai*, *Parsonage*, and *Yeh*, the FCRA creates statutory rights, authorizes statutory damages for their willful violation, and does not require proof of actual injury or consequential harm. Askins therefore need not demonstrate any injury beyond the violation of his statutory rights under the FCRA. The statutory violation itself supplies the concrete interest necessary to maintain the action. (*Kim*, *supra*, 9 Cal.5th at p. 83 [plaintiffs need only claim " 'a sufficient interest in the subject matter of the dispute to press their case with vigor.' "].)

### 3. We Decline To Follow *Limon*

It is for these reasons that we part ways with the conclusion reached in *Limon*, *supra*, 84 Cal.App.5th 671, that a party bringing an FCRA claim must demonstrate a beneficial interest, which can only be satisfied by a showing of actual loss because both "actual damages" and statutory "damages" under section 1681n necessarily "connote[] compensation for an injury." (*Limon*, at p. 702.) We do not find *Limon*'s reasoning persuasive.

First, *Limon* concluded "damages" must indicate compensation for injury by contrasting Congress's use of that term in section 1681n with its use of "civil penalty" in section 1681s. (*Limon*, *supra*, 84 Cal.App.5th at pp. 700–701; see § 1681s(a)(2)(A) ["Except as otherwise provided . . . , in the event of a knowing violation, . . . , the Federal Trade Commission may commence a civil action to recover a civil penalty" up to "$2,500 per violation."].) But *Limon* fails to note the key distinction between those sections; namely, that one involves an enforcement action by the Federal Trade Commission (FTC) whereas the other addresses consumer actions.

14

Use of the term "penalty" rather than "damages" merely acknowledges that the FTC would not have suffered "loss, detriment, or injury" to "[its] person, property, or rights." (Black's Law Dict. (6th ed. 1990) p. 389 ["damages" definition].) It does not indicate, as *Limon* concludes, that statutory damages were included solely to compensate for an actual injury or loss.

Next, *Limon* relies on the ordinary meaning of "damages" as defined by Black's Law Dictionary in 2019 to conclude the term is limited to compensation for "loss or injury." (*Limon*, *supra*, 84 Cal.App.5th at p. 701.) But the 2019 dictionary definition was significantly narrower than the 1990 dictionary definition in effect when Congress amended the FCRA in 1996. As we explained above, the operative definition of "damages" in 1996 included technical violations of rights where there was no substantial loss or injury to be compensated.

Finally, neither case cited by *Limon* to support its interpretation— *Raines v. Coastal Pacific Food Distributors, Inc.* (2018) 23 Cal.App.5th 667 or *Thomas v. FTS USA, LLC* (E.D.Va. 2016) 193 F.Supp.3d 623—assist its analysis. *Raines* did not involve a claim under the FCRA. And *Thomas* specifically noted that "statutory violations" based on the defendants' conduct "are redressable by statutory damages." (*Thomas*, at p. 629.) The portions of *Thomas* cited by *Limon* involve the injury-in-fact analysis under Article III, which is inapplicable here.

Based on this reasoning, *Limon* concluded the plaintiff failed to adequately allege a claim for damages based solely on the defendant's failure to provide FCRA-compliant disclosures. (See also *Muha v. Experian Information Solutions, Inc.* (2024) 106 Cal.App.5th 199, 208–209 [adopting reasoning of *Limon*].) We decline to adopt *Limon*'s approach and believe our

15

interpretation closer accords to the plain language of the FCRA and Congress's intent.

### C. Askins Has a Sufficient Interest in His FCRA Claim Based on CRST's Statutory Violation

The FCRA's disclosure provisions were designed to provide two main rights to consumers: (1) " 'ensuring accurate credit reporting, promoting efficient error correction;' " and (2) " 'protecting privacy.' " (*Limon, supra*, 84 Cal.App.5th at p. 689; *Robins v. Spokeo, Inc.*, *supra*, 867 F.3d at p. 1113 [FCRA designed to " 'ensure fair and accurate credit reporting' and to 'protect consumer privacy.' "].)  Here, CRST's alleged statutory violation of the FCRA, i.e., the violation of Askins's rights to ensure accurate reporting and privacy, supplies Askins the concrete interest necessary to maintain the action.

The parties do not appear to dispute—at least for purposes of this appeal—that CRST's disclosure did not comply with the FCRA's requirements.  Askins submitted evidence that the disclosure forms he received were lengthy and confusing and contained extraneous information, and he was not aware that CRST would conduct a background check.  As a result, he was not placed in a position to meaningfully understand, object to, or decline the background check, or to take steps to verify or correct any information that might be obtained through it.

Even assuming the resulting report contained no inaccuracies, the failure to provide a clear and FCRA-compliant disclosure deprived Askins of the very procedural protections Congress enacted to safeguard consumer privacy.  That deprivation constitutes a concrete interference with Akins's statutory privacy rights and demonstrates a concrete interest that is " ' " 'over and above the interest held in common with the public at large.' " ' " (*Department of Fair Employment & Housing v. M&N Financing Corp.* (2021)

16

69 Cal.App.5th 434, 444.) In other words, the statutory violation itself—failure to provide the required disclosure before obtaining a background report—constitutes the very injury the FCRA is designed to prevent and suffices to confer standing.

## III. Adequacy of Askins as Class Representative

CRST argued in the trial court that class certification was inappropriate due to individualized issues of injury, but Askins correctly observes that the trial court did not rely on that rationale in its decertification order. CRST likewise acknowledges that the order was not based on that ground.

Because the issue was not addressed or resolved by the trial court, we decline to consider it in the first instance. Considering our holding regarding standing under the FCRA, the trial court is best positioned to address any remaining decertification arguments on remand.

### DISPOSITION

The order decertifying the class is reversed. We do not opine on whether Askins is an appropriate class representative or whether the class could be decertified on other bases. Askins may recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

PETROU, J.

WE CONCUR:

FUJISAKI, Acting P. J.

RODRÍGUEZ, J.

A172921 / *Askins v. CRST Expedited, Inc.*

18

Trial Court:        San Mateo County Superior Court

Trial Judge:        Hon. Jeffrey R. Finigan

Counsel:

Setareh Law Group, Shaun Setareh, Thomas Segal, and Farrah Beverly Grant; and Public Justice, Leah M. Nicholls for Plaintiff and Appellant.

Seth E. Merman for Nursing Home Reform, Centro Legal De La Raza, Community Legal Services in East Palo Alto, Contra Costa Senior Legal Services, East Bay Community Law Center, Housing and Economic Rights Advocates, The Katharine & George Alexander Community Law Center, Legal Assistance for Seniors, Public Counsel, and Public Justice as Amici Curiae on behalf of Plaintiff and Appellant.

O'Hagan Meyer, Anthony C. Oceguera and Elaine M. McCormick for Defendant and Respondent.